SIXTH DIVISION 

                                         February 6, 1998

     

 

      

No. 1-96-3497 

OTAKAR KIRCHNER, individually and      )  Appeal from the

as Father and Next Friend of           )  Circuit Court of 

DANIEL KIRCHNER, a Minor,              )  Cook County

                                       )

Plaintiffs-Appellants,       )

                                       )

v.                           )

                                       )

BOB GREENE, CHICAGO TRIBUNE COMPANY,   )

and CHICAGO TRIBUNE NEWSPAPERS, INC.,  )  Honorable

                                       )  Kathy M. Flanagan, 

Defendants-Appellees.        )  Judge Presiding. 

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs Otakar Kirchner, individually and as next friend of Daniel Kirchner, a minor, appeal the dismissal with prejudice of their three-count complaint against defendants Bob Greene, Chicago Tribune Company and Chicago Tribune Newspapers, Inc.  The complaint alleged causes of action for defamation 
per
 
se
, false light/invasion of privacy, and abuse of process based on certain articles that appeared in the Chicago Tribune newspaper.  We affirm the dismissal of the complaint under section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)).  

This appeal raises five issues: (1) whether the trial court properly granted defendants' motion to strike the exhibits attached to plaintiffs' reply to defendants' section 2—615 motion to dismiss and the portions of plaintiffs' reply that referenced the exhibits; (2) whether the complaint stated a cause of action for defamation; (3) whether the complaint stated a cause of action for false light/invasion of privacy; (4) whether the complaint stated a cause of action for abuse of process; and (5) whether plaintiffs can amend their complaint.  

Plaintiff Otakar Kirchner (Kirchner) is the biological father of plaintiff Daniel Kirchner (Daniel), who had been adopted by another couple four days after his birth.  Kirchner initiated child custody proceedings to gain custody of Daniel from the adoptive parents.  The custody action became known throughout the country as the "Baby Richard" case.  Following highly publicized and lengthy court proceedings, the Illinois Supreme Court awarded custody of Daniel to Kirchner by an order effective January 25, 1995, and reaffirmed that order by its opinion filed on February 28, 1995.  See 
In re Petition of Doe
, 254 Ill. App. 3d 405 (1993), 
rev'd
, 159 Ill. 2d 347 (1994), 
reh'g denied
, 159 Ill. 2d 362, 
cert. denied
, 513 U.S. 994, 130 L. Ed. 2d 408, 115 S. Ct. 499 (1994); 
In re Petition of Kirchner
, 164 Ill. 2d 468 (1995), 
cert. denied
, 515 U.S. 1152, 132 L. Ed. 2d 846, 115 S. Ct. 2599 (1995).  Kirchner picked up four-year-old Daniel from the residence of Daniel's adoptive parents on April 30, 1995.  

In May 1996, plaintiffs filed the three-count complaint at issue in this appeal.  Count I asserted a cause of action for defamation 
per
 
se
 based on articles published by the Chicago Tribune and written by Bob Greene, a columnist with the Chicago Tribune and a syndicated columnist appearing in other national publications.  Count I specifically referred to four 1995 columns by Greene dated May 9, May 10, May 23, and December 24.  These four articles were attached as exhibits to the complaint.  

Regarding Greene's May 9, 1995, article, plaintiffs alleged that Greene claimed "Daniel had been or was in the process of being 'broken like a dog' and called on the police, courts and child welfare agencies to look into and prevent this asserted abuse."  Regarding Greene's May 10, 1995, article, plaintiffs directed attention to the words "a crime" and alleged that "Greene claimed that the return of Daniel to his family which Otakar Kirchner sought was 'a crime.'"  Regarding Greene's May 23, 1995, column, plaintiffs alleged that Greene "repeatedly referred to the transfer of custody as 'a crime,' 'an atrocity,' an 'unlawful act,' and an 'assault' on Daniel Kirchner."  Regarding Greene's December 24, 1995, column and referring in general to articles written by Greene between August 1993 and December 1995, plaintiffs alleged that the articles "were designed to defame Plaintiff Otakar Kirchner's good name and reputation, culminating in a December 24, 1995, Bob Greene article claiming that the Kirchners had 'broken' Daniel 'like a dog.'"  Count I further alleged that the statements made by Greene in the designated columns were "untrue and defamatory" and were published "with actual malice, knowing then to be false, or in the alternative with a reckless disregard for their falsehood and with a reckless disregard for the personal and business reputation of" Kirchner.  For the alleged defamation, Kirchner sought compensatory and punitive damages.  

Count II included both Kirchner and Daniel and alleged a cause of action for false light/invasion of privacy based on the Greene articles mentioned in count I and on an article dated May 3, 1995, authored by Mike Royko, now deceased, who was a columnist for the Chicago Tribune and a syndicated columnist appearing in other national publications.  In paragraph 27, plaintiffs alleged that the May 3 article by Royko "intimated that Otakar Kirchner had pursued and obtained custody of Daniel in order to make money."  In paragraph 29, plaintiffs alleged that the subject articles "asserted that Daniel was a victim of parental abuse and cast him as an object of public pity."  Seeking compensatory damages, plaintiffs claimed a loss of employment, income and residency, injury to their reputation, and emotional and dignitary harms.  Plaintiffs sought compensatory damages. 

Count III asserted a cause of action for abuse of process, stating that "[d]efendants publicly alleged Plaintiff Otakar Kirchner had committed criminal child abuse" and, as a consequence, "Kirchner was forced to undergo the humiliation of an investigation by the Illinois Department of Children and Family Services."  Count III realleged the same references to the four Greene articles (May 9, May 10, May 23, and December 24, 1995).  

Defendants filed a section 2—615 motion to dismiss the complaint as insufficient in law.  In turn, plaintiffs filed a reply memorandum and attached as exhibits over 40 articles by Greene and Royko published in 1993, 1994, 1995, and 1996.  Defendants apparently filed a motion to strike plaintiffs' reply memorandum, arguing that plaintiffs had improperly discussed and included materials outside the scope of the complaint.  Subsequently, plaintiffs' filed a motion in opposition to defendants' motion to strike their reply memorandum.          

Following a hearing on September 27, 1996, the trial court granted defendants' section 2—615 motion to dismiss the complaint with prejudice and granted defendants' motion to strike the materials plaintiffs appended to their response (
i.e.
, an affidavit by Kirchner and over 40 articles) and any matter contained in the response that was based upon the appendix.  

On appeal, plaintiffs assert that the trial court erred in striking the exhibits and the portions of their reply brief referencing the exhibits.  Defendants contend that the contested material in and attached to plaintiffs' reply brief had to be stricken because it was outside the four corners of the complaint and, thus, improper in the context of a section 2—615 motion to dismiss.  We agree with defendants.  

A motion to dismiss under section 2—615 attacks the legal sufficiency of a complaint and alleges only defects on the face of the complaint.  
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 86 (1996).  Exhibits attached to the complaint are a part of the complaint and must be considered.  
Brock v. Anderson Road Ass'n
, 287 Ill. App. 3d 16, 21 (1997).  In addition, for purposes of a section 2—615 motion, the court considers matters subject to judicial notice and judicial admissions in the record.  
Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 
115 (1995).  Facts in a prior court opinion are subject to judicial notice.  
Chicago v. American National Bank & Trust Co.
, 233 Ill. App. 3d 1031, 1038 (1992) ("[t]he trial court properly took notice of the facts stated in a published opinion of our supreme court").  In contrast, for purposes of a section 2—615 motion, a court may not consider "affidavits, affirmative factual defenses or other supporting materials."  
Oravek v. Community School District 146
, 264 Ill. App. 3d 895, 898 (1994), cited with approval in 
Bryson
, 174 Ill. 2d at 91.  

In 
Bryson
, the Illinois Supreme Court held that defendants' section 2—615 motion must be considered as a section 2—619 motion (735 ILCS 5/2—619 (West 1996)).  
Bryson
, 174 Ill. 2d at 91-92.  The plaintiffs in 
Bryson
 had filed a complaint that alleged defamation 
per
 
se
 based on the use of the word "slut" in a magazine article and then failed to attach the magazine article.  In their motion to dismiss, the defendants attached as an exhibit a copy of the magazine article in which the alleged defamatory statement appeared.  The trial and appellate courts relied upon the magazine article in addition to the allegations in the complaint in dismissing the defamation 
per
 
se
 counts under the innocent construction rule.  The supreme court held that such reliance on affirmative matters outside the pleadings was an improper use of section 2—615 and, thus, considered the motion as having been filed and decided under section 2—619.  
Bryson
, 174 Ill. 2d at 91-92.  

Relying on 
Bryson
, plaintiffs in the present case argue that defendants, in their memorandum in support of their motion to dismiss, exceeded the bounds of the complaint and thereby converted the section 2—615 motion to a section 2—619 motion.  Plaintiffs submit that this conversion arose because "[d]efendants chose to provide a summary of the Baby Richard case and to describe the role of the Chicago Tribune and Bob Greene in the controversy."  Plaintiffs' characterization of defendants' motion to dismiss is not accurate.  

Plaintiffs' complaint includes allegations that specifically mention the background of the custody case initiated by Kirchner, the media's identification of the matter as the "Baby Richard" case, the 1994 and 1995 opinions and orders by the Illinois Supreme Court, the denial of the adoptive parents' petition for 
certiorari
 to the United States Supreme Court, and the events of April 30, 1995, when Kirchner took custody of Daniel.  Furthermore, paragraph 12 of plaintiffs' complaint contains a lengthy quotation from the Illinois Supreme Court's opinion of July 12, 1994.  

The record reveals that defendants' section 2—615 motion to dismiss and memorandum in support of the motion directly linked their statements and arguments to the allegations in plaintiffs' complaint, the five newspaper columns attached as exhibits to plaintiffs' complaint and the Illinois Supreme Court decisions that are not only mentioned, but are discussed and quoted, in plaintiffs' complaint.  Unlike the 
Bryson
 defendants, the instant defendants, in their motion to dismiss, did not attach or rely upon any matters outside the pleadings.  Instead, it was plaintiffs who attached an affidavit and exhibits to their reply.

In their appellate brief, plaintiffs acknowledge that their reply to defendants' motion to dismiss included materials beyond the confines of their complaint by stating in relevant part that "the Plaintiff's Exhibits and those portions of the [reply] brief *** 
dealt with matters outside the face of the complaint
."  (Emphasis added.)  Furthermore, in their appellate brief, plaintiffs acknowledge that the trial court did not consider any extrinsic facts, "[i]n this case, with its significant extrinsic facts, none of which were considered by the court below."  

In light of the record, we find that defendants did not include matters beyond those which can be considered by a court in a section 2—615 motion and, thus, did not convert their section 2—615 motion into a section 2—619 motion.  However, in light of the record and plaintiffs' acknowledgements, we find that plaintiffs included improper materials (an affidavit and 47 exhibits) in their reply to defendants' motion to dismiss.  Accordingly, the trial court properly granted defendants' motion to strike the materials and arguments in plaintiffs' reply to defendants' section 2—615 motion to dismiss because they clearly exceeded the material that can be considered in such a motion.  

Where the trial court dismisses a complaint under section 2—615, this court applies a 
de
 
novo
 standard of review.  
Brown Leasing, Inc. v. Stone
, 284 Ill. App. 3d 1035, 1044 (1996).  The question presented by a section 2-615 motion to dismiss for failure to state a cause of action is whether sufficient facts are contained in the pleadings which, if established, would entitle the plaintiff to relief.  
Wright v. City of Danville
, 174 Ill. 2d 391, 398 (1996).  Thus, the only question on appeal is whether the dismissed counts stated a cause of action.  
Brown Leasing
, 284 Ill. App. 3d at 1044; 
Majumdar v. Lurie
, 274 Ill. App. 3d 267, 268 (1995).  In determining this issue, we must take all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts that are favorable to the plaintiff.  
Brown Leasing
, 284 Ill. App. 3d at 1045.  

Count I of the complaint involves only Kirchner and alleges a cause of action for defamation 
per
 
se
 based on newspaper columns written by Greene.  Kirchner argues that the language in the Greene columns accused him of the crime of child abuse.  

Under our common law, four categories of statements constitute defamation 
per
 
se
 where they impute: (1) commission of a crime; (2) infection with a communicable disease; (3) inability to perform or want of integrity to discharge duties of office or employment; and (4) prejudice to a party, or lack of ability, in his trade, profession or business.  
Bryson
, 174 Ill. 2d at 88; 
Doherty v. Kahn
, 289 Ill. App. 3d 544, 554 (1997).  Damages are presumed when a statement is defamatory 
per
 
se
.  
E.g.
, 
Mittelman v. Witous
, 135 Ill. 2d 220, 234 (1989).   

Even statements that constitute defamation 
per
 
se
 are not actionable where they are reasonably capable of an innocent construction.  The modified innocent construction rule provides "that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable 
per
 
se
."  
Chapski v. Copley Press
, 92 Ill. 2d 344, 352 (1982).  "It is self-evident that a statement 'reasonably' capable of a nondefamatory interpretation, given its verbal or literary context, should be so interpreted."  
Mittelman
 135 Ill. 2d at 232.   

The modified innocent construction rule applies only to defamation 
per
 
se
 actions.  
Mittelman
, 135 Ill. 2d at 232. "The rigorous standard of the modified innocent construction rule favors defendants in 
per
 
se
 actions in that a nondefamatory interpretation must be adopted 
if
 it is 
reasonable
.  The tougher standard is warranted because of the presumption of damages in 
per
 
se
 actions."  (Emphasis in original.)  
Mittelman
, 135 Ill. 2d at 234.  Whether a statement may reasonably be innocently interpreted is a question of law to be resolved by the court.  
Chapski
, 92 Ill. 2d at 352.  

In the present case, Kirchner rests his defamation 
per
 
se
 claim on the first category, asserting that defendants' words imputed the commission of the crime 
of child abuse.  To constitute defamation 
per
 
se
 based on imputing the commission of a crime, "the crime must be an indictable one, involving moral turpitude and punishable by death or by imprisonment in lieu of a fine."  
Adams v. Sussman & Hertzberg, Ltd.
, 292 Ill. App. 3d 30, 46 (1997) (no defamation 
per
 
se
).  "While the words charging the commission of a crime need not meet the technical requirements that are necessary for an indictment, the words must fairly impute the commission of a crime."  
Adams
, 292 Ill. App. 3d at 47 (the statements at issue did not definitively impute the commission of a crime).  

Moreover, the innocent construction rule applies in determining whether a statement alleged to be defamatory 
per
 
se
 imputes a criminal offense.  
Perry v. Wiltse
, 256 Ill. App. 3d 422 (1993); 
Harrison v. Sears, Roebuck & Co.
, 189 Ill. App. 3d 980, 996 (1989); 
Sivulich v. Howard Publications, Inc.
, 126 Ill. App. 3d 129 (1984).  "If the actual words spoken [or written] do not by themselves denote criminal (or unethical) conduct and in common usage have a more flexible and broader meaning than ascribed by plaintiff, then, as a matter of law, the words are nonactionable as defamation 
per
 
se
."  
Harris Trust & Savings Bank v. Phillips
, 154 Ill. App. 3d 574, 581 (1987).  

In the present case, Kirchner's defamation 
per
 
se
 cause of action is completely premised on the allegation that Greene accused Kirchner of the criminal offense of child abuse.  A review of the language at issue reveals that Kirchner's claim fails because there is no positive factual statement of criminal child abuse to support a defamation 
per
 
se
 claim and, furthermore, the asserted statements are not directed to Kirchner.  

Regarding the Greene columns dated May 9 and December 24, 1995, Kirchner alleged that Greene claimed that Daniel had been or was in the process of being "broken like a dog" and called on the police, courts and child welfare agencies to look into and prevent this asserted abuse.  Kirchner argues that the "breaking" statements, in the context of the columns, accused Kirchner of abusing Daniel.  

The May 9 column was entitled "You Can Break a Child Like a Dog" and mostly consisted of quotations from various people who knew Daniel before Daniel was transferred to Kirchner and commented on Daniel's appearance and demeanor after the transfer.  Greene wrote: 

"You can break a dog; you can break a child like a dog.   It's only a matter of time.  You can remove a child from everything he's ever known, everyone he's ever loved, and if you control the voices he hears, you can break him.   Civilized societies are supposed to have mechanisms — police, courts, child-welfare agencies — to prevent this."  

Bob Greene, 
You Can Break a Child Like a Dog
, Chicago Tribune, May 9, 1995 (Tempo section) at 1.    

The May 9 column continued and concluded only using quotations from other people.  The May 9 column never even mentioned Kirchner's name.     

The December 24, 1995, column primarily focused on the complete lack of contact between Daniel and his adoptive brother and then stated "[y]ou can break a child like a dog."  Bob Greene, 
For Two Betrayed Boys, One More Night of Silence
, Chicago Tribune, Dec. 24, 1995 (News) at 2.  The column continued by stating that the Illinois Supreme Court refused to help Daniel and his adoptive family, and by quoting the Governor regarding the state supreme court.    

For the purpose of defamation 
per
 
se
 and taken in context of the entire columns, 
the statements made in the May 9 and December 24 columns as to "breaking like a dog" are not positive factual statements to impute the commission of criminal child abuse against Kirchner.  See 325 ILCS 5/3 (West 1994) (Abused and Neglected Child Reporting Act).  It is an idiom subject to a broader and noncriminal interpretation that relates to the training or breaking of one's spirit.  Such an interpretation is certainly reasonable given the character of the quotes that accompany Greene's comments and the context in which the phrase  is employed.    

Regarding the May 10, 1995, column, Kirchner alleges that Greene claimed that the return of Daniel to Kirchner was a "crime."  Similarly, regarding the May 23, 1995, column, Kirchner directs attention to the words "a crime," "an atrocity," an "unlawful act," and an "assault" upon Daniel.  A full and fair reading of these two columns, however, clearly shows that the words at issue directly refer to the Illinois Supreme Court's decision to transfer custody of Daniel to Kirchner.  The "crime" is clearly directed at persons in the judicial system, not Kirchner. 

Sometimes judges are called upon to stand against the wind of public opinion whether in a reversal of a criminal case for reasons that appear technical in nature but are mandated by the constitution, an unpopular child custody case, or invalidating a popular legislative enactment.  While no member of the judiciary enjoys hearing the kind of epitaph used here, in a free society public officials learn to accept such criticism in the same manner as they enjoy the occasional praise of their official actions --- it just goes with the territory.    

The language in the newspaper columns does not impute the commission of a crime and, therefore, the trial court properly dismissed the count premised on defamation 
per
 
se
.    

Count II asserts a cause of action for false light/invasion of privacy, alleging that the May 3, 1995, article by Royko "intimated that Otakar Kirchner had pursued and obtained custody of Daniel in order to make money."  Count II further alleges that the Greene and Royko columns "asserted that Daniel was a victim of parental abuse and cast him as an object of public pity."  

Three elements are required to state a cause of action for false light: (1) the plaintiffs were placed in a false light before the public as a result of the defendants' actions; (2) the false light in which the plaintiffs were placed would be highly offensive to a reasonable person; and (3) the defendants acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard for whether the statements were true or false.  
Kolegas v. Heftel Broadcasting Corp.
, 154 Ill. 2d 1, 17-18 (1992) (the plaintiffs adequately stated a cause of action for false light based on certain statements made by two radio disc-jockeys).  

Although the causes of actions of false light and defamation overlap somewhat, they are different.  "[A]ll defamation cases can be analyzed as false-light cases, but not all false-light cases are defamation cases."  
Lovgren v. Citizens First National Bank
, 126 Ill. 2d 411, 421 (1989).  The recognition by the Illinois Supreme Court in 
Lovgren
 that the existence of defamation is not a requirement for a false-light claim 
accords with the fact "that courts universally have held that a statement need not be defamatory for a false-light privacy action to lie."  
Boese v. Paramount Pictures Corp.
, 952 F. Supp. 550, 558-59 (N.D. Ill. 1996) (and cases cited therein); but see 
Harte v. Chicago Council of Lawyers
, 220 Ill. App. 3d 255, 263 (1991) (the first district held that where the plaintiff failed to state a cause of action for defamation 
per
 
se
, the count "alleging invasion of privacy (false light), must fail as well").

In recognizing the tort of false light, the Illinois Supreme Court adopted the "actual malice" approach "to require proof of knowledge of the falsity of the publication or that the defendant acted in reckless disregard of the truth."  
Lovgren
, 126 Ill. 2d at 422.  The 
Lovgren
 court reasoned that "'the outrageous character of the publicity comes about in part by virtue of the fact that some part of the matter reported was 
false
 and deliberately so.'"  (Emphasis added.)  
Lovgren
, 126 Ill. 2d at 423, quoting W. Keeton, Prosser & Keeton on Torts §117, at 864-65 (5th ed. 1984).  

Absent some allegation as to what specific statement was false, a claim based on 
false
 light simply fails to satisfy the most basic element of the cause of action.  Count II of the complaint is completely devoid of any allegation as to the falsity of any declaration in the columns, and, therefore, count II was properly dismissed. 

Moreover, in the compliant, Kirchner's false-light claim is based on the specific allegation that Royko's May 3 article "intimated that Otakar Kirchner had pursued and obtained custody of Daniel in order to make money."  The closest statement that appears to be mercenary-like is actually attributed to Kirchner's lawyer.  The Royko column states in relevant part: 

"But don't be surprised if Otto and his storefront lawyer come up with something themselves.  As lawyer Heinemann has said: 

'There is no book deal pending, there is no movie deal pending.  But I wish that there were because 
I'd like to get paid
.'  

Of course.  Isn't that what it's all about?"  (Emphasis added.)  Mike Royko, 
It's not Hollywood, but Otto's on a Roll
, Chicago Tribune, May 3, 1995, §1, at 3. 

The money issue appears clearly directed at the lawyer's, not Kirchner's, desire to get paid. 

Count III involves only Kirchner and alleges a cause of action for abuse of process based on an investigation conducted by the Illinois Department of Children and Family Services (DCFS).  Kirchner argues that the newspaper articles initiated the DCFS investigation because the articles accused Kirchner of committing criminal child abuse.  

The two elements of a claim for abuse of process are (1) some act in the use of the legal process not proper in the regular prosecution of such proceedings, and (2) the existence of an ulterior purpose or motive.  
Arora v. Chui
, 279 Ill. App. 3d 321, 331 (1996); 
Holiday Magic, Inc. v. Scott
, 4 Ill. App. 3d 962, 966 (1972).  The mere use of the legal process, such as the filing of a lawsuit, does not constitute abuse of process.  
Kurek v. Kavanagh, Scully, Sudow, White & Frederick
, 50 Ill. App. 3d 1033, 1038 (1977); 
Holiday Magic
, 4 Ill. App. 3d at 967.  "Some act must be alleged whereby there has been a misuse or perversion of the process of the court."  
Holiday Magic
, 4 Ill. App. 3d at 967.  "The gist of the tort of abuse process is contained within its title.  An actionable tort does not exist unless there is some improper use of the process of the court."  
Holiday Magic
, 4 Ill. App. 3d at 967.   

 "Process" is defined "as any means used 
by the court
 to acquire or exercise jurisdiction over a person or over specific property."  (Emphasis in original.)  
Arora
, 279 Ill. App. 3d at 331; 
Holiday Magic
, 4 Ill. App. 3d at 968. 

Kirchner's claim fails for the simple reason that no court  process was involved and, thus, it is axiomatic that there can be no abuse of process.  Kirchner recognizes this fact in urging us to expand the tort of abuse of process to include proceedings undertaken by the DCFS because it is a quasi-judicial administrative body that is charged with the responsibility of adjudicating claims of child abuse.  Such expansion is baseless in the law and would be contrary to the narrow strictures to which courts have confined this tort.  See 
Commerce Bank, N.A. v. Plotkin
, 255 Ill. App. 3d 870, 872 (1994) ("Illinois courts have generally taken a very restrictive view of the tort of abuse of process").   

Finally, plaintiffs contend that the trial court abused its discretion in not permitting them to replead the claim for false light and "in not permitting Plaintiffs to replead a claim of defamation 
per
 
quod
."  The dispositive fact regarding amendment of the complaint is that plaintiffs never requested in the trial court, in either a written or verbal manner, to amend their complaint.  Consequently, the trial court made no ruling on the issue of amending the complaint and, thus, cannot be said to have abused its discretion in denying a request that was never made.  

In his appellate brief to this court, Kirchner requests that he be allowed to amend his complaint.  Kirchner's request fails on two grounds.  First, an issue raised in a party's appellate brief without clearly defined issues and relevant authority may be deemed waived.  
Heatherly v. Rodman & Renshaw, Inc.
, 287 Ill. App. 3d 372, 379 (1997).  Second, Kirchner failed to follow the dictates of Illinois Supreme Court Rule 362, which governs the procedure for asking this court to allow amendment of pleadings.  155 Ill. 2d R. 362.  Rule 362(a) provides that "[a]ny party who seeks on appeal to amend his or her pleadings *** shall present a written application therefor, supported by affidavit."  155 Ill. 2d R. 362(a).  

In conclusion, we affirm the dismissal of plaintiffs' complaint with prejudice.  

Affirmed. 

ZWICK and QUINN, JJ., concur.