**DAROVEC MARKETING GROUP, INC., an Illinois corporation, Joseph M. Darovec, and Heather L. Harrington, Plaintiffs,**

v.

**BIO–GENICS, INC., a Utah corporation, d/b/a E'ola International, and Fred Rogers, Defendants.**

No. 98 C 2008.

United States District Court, N.D. Illinois, Eastern Division.

March 16, 1999.

George Charles Ellison, Erik W. Nielsen, Ellison & Nielsen, Chicago, IL, Timothy John Klein, Attorney at Law, Bloomingdale, IL, for Darovec Marketing Group, Inc., Joseph M. Darovec, Heather L. Harrington, plaintiffs.

Earle S. Rappaport, Jr., Bret Andrew Rappaport, Todd L. Padnos, Schwartz, Cooper, Greenberg & Krauss, Chicago, IL, for Bio–Genics Inc., Fred Rogers, defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Darovec Marketing Group ("DMG"), Joseph Darovec ("Darovec") and Heather Harrington ("Harrington") (together, "plaintiffs") have filed a five count complaint against defendants Bio–Genics, Inc., d/b/a/ E'ola International ("E'ola") and Fred Rogers ("Rogers"), alleging that: (1) defendant E'ola is liable under the Illinois Sales Representative Act for failure to pay sales commissions owed to DMG under a distributorship agreement (Count I); and (2) defendants E'ola and Rogers are liable for libel *per se* and libel *per quod* for statements published in an "Official Memorandum" transmitted to other E'ola distributors (Counts II–V).[1] Defendants move to dismiss all counts under Fed.R.Civ.P. 12(b)(6), claiming that: (1) DMG is not a "sales representative" as defined by the Sales Representative Act, and therefore may not seek damages under the Act; (2) the Memorandum is not defamatory *per se* because it does not fit within the recognized actionable *per se* categories and is subject to an innocent construction; and (3) the Memorandum is not defamatory *per quod* because plaintiffs have not adequately alleged special damages. In addition, defendant Rogers moves to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. As discussed below, the motion to dismiss the Sales Representative Act and defamation *per quod* counts is granted, and the motion to dismiss the defamation *per se* counts is denied. Rogers's motion to dismiss for lack of personal jurisdiction is denied.

## FACTS

Plaintiff DMG is an Illinois corporation. Plaintiffs Darovec and Harrington are offi-

---

1. Illinois courts have abandoned any distinction between slander and libel. *See Bryson v. News America Publications, Inc.*, 174 Ill.2d 77, 87, 220 Ill.Dec. 195, 672 N.E.2d 1207 (1996). The same rules apply to a defamatory statement regardless of whether it is written or oral. *See id.* Accordingly, for simplicity purposes, the court will refer to plaintiffs' libel counts as defamation.

cers of DMG and Illinois residents. Defendant E'ola is a Utah corporation that manufactures consumer products. Defendant Rogers is E'ola's "Compliance Coordinator" and a Utah resident.

In August 1996, DMG became an authorized independent distributor of E'ola's products. The distributorship agreement entitled DMG to compensation under the E'ola Compensation Plan (the "Plan"). The Plan offers distributors several ways to earn compensation. A distributor may glean resale profits from its own personal purchases, and may sponsor other distributors and earn commissions from those distributors' personal purchases.

In December 1997, E'ola unilaterally terminated DMG as a distributor. Following the termination, defendant Rogers authored and transmitted an official memorandum (the "Memorandum") on behalf of E'ola to E'ola's other independent distributors. The Memorandum, dated December 12, 1997, and signed by Rogers, begins as follows:

> OFFICIAL MEMORANDUM TO E'OLA INDEPENDENT DISTRIBUTORS
>
> E'OLA's commitment to honesty, integrity and excellent service, have and continue to be the core of our Corporate Office values. In this regard, it has become necessary to inform you that on December 2, 1997, E'OLA terminated the distributorship of Mike Darovec and Heather Harrington, dba Darovec Marketing Group, Inc. of Bloomingdale, Illinois. E'OLA's action stems, in part, from numerous E'OLA policy violations and blatant disregard for the welfare of their fellow Distributors.
>
> Accordingly, Darovec Marketing Group, Inc. is no longer authorized to sell, promote, endorse, in any way be affiliated with, or have access to E'OLA and its products.

On January 6, 1998, DMG filed an action against E'ola in the Circuit Court of Du-

Page County, Illinois. Plaintiffs then filed their First Amended Complaint, adding Darovec and Harrington as plaintiffs and Rogers as a defendant. Defendants subsequently removed the action to this court pursuant to 28 U.S.C § 1441.[2]

## DISCUSSION

### I. STANDARDS FOR A MOTION TO DISMISS

In ruling on a motion to dismiss, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429–30 (7th Cir.1996). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Travel All Over the World*, 73 F.3d at 1428.

### II. SALES REPRESENTATIVE ACT CLAIM

In Count I, DMG seeks compensation under the Illinois Sales Representative Act (the "Act") for E'ola's alleged failure to pay commissions, bonuses, and over-rides owed to DMG under the Compensation Plan. The Act provides for exemplary damages not to exceed three times the amount of damages found to be owed to a "sales representative" from a "principal." 820 ILCS 120/3. The Act defines a sales representative as follows:

> [A] person who contracts with a principal to solicit orders and who is compen-

---

**2.** Because jurisdiction is based entirely on diversity of citizenship, this court will apply the law of Illinois. *See Erie R. Co. v. Tomp-* *kins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

sated, in whole or in part, by commission, but shall not include one who places orders or purchases for his own account for resale or one who qualifies as an employee of the principal pursuant to the Illinois Wage Payment and Collection Act.

820 ILCS 120/1(4).

E'ola contends that DMG "purchases for its own account for resale," *id.*, and that therefore the Act specifically excludes DMG from protection. DMG acknowledges earning income from such purchases. DMG contends that it is nevertheless entitled to the Act's protection because it also "contracts with a principal to solicit orders and ... is compensated ... by commission." At a minimum, DMG argues, it is a "sales representative" with respect to orders made other than for "its own account for resale."

Whether DMG is covered by the Act is a question of statutory construction. As the Illinois Supreme Court held in *Solich v. George and Anna Portes Cancer Prevention Center*, 158 Ill.2d 76, 81, 196 Ill.Dec. 655, 630 N.E.2d 820 (Ill.1994), "the cardinal rule of statutory construction, to which all other canons are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature." The best indication of legislative intent is the statutory language. *Id.*

■ In this case, the statutory language is unambiguous. The definition of "sales representative" explicitly excludes one who "places orders or purchases for his own account for resale...." 820 ILCS 120/1(4). DMG asks the court to construe this definition to mean that if a person solicits orders for a principal for commission and *also* purchases for her own account for resale, she is a "sales representative" with respect to the commission portion. This construction ignores the statute's plain language. Had the Illinois legislature intended to provide the Act's protection to those persons who both purchase for resale and solicit orders for the principal, it would have done so specifically. The legislature

can be presumed to have been aware that this type of relationship exists. The court is not willing to expand the definition and scope of the Act if the Illinois legislature has not chosen to do so, and where the statute's plain meaning is most consistent with excluding this type of distributor from its scope. *See Kenebrew v. Conn. General Life Ins. Co.*, 882 F.Supp. 749, 754 (N.D.Ill.1995) (refusing to expand the scope of the Sales Representative Act to include insurance agents because the Act's plain language indicates it only applies to sales representative who sell tangible items). As this court has noted, "any expansion of the [Sales Representative Act] is the role of the legislature and not this court." *Id.* at 755. The court grants defendants' motion to dismiss Count I.

### III. DEFAMATION *PER SE* CLAIM

In Counts II and IV, plaintiffs Darovec and Harrington allege that the Memorandum is defamatory *per se*. A statement is defamatory *per se* if it is "so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary." *Owen v. Carr*, 113 Ill.2d 273, 277, 100 Ill.Dec. 783, 497 N.E.2d 1145 (1986). Under Illinois common law, four categories of statements are considered defamatory *per se* and give rise to a cause of action for defamation without a showing of special damages: "(1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Bryson v. News America Publications, Inc.*, 174 Ill.2d 77, 88, 220 Ill.Dec. 195, 672 N.E.2d 1207 (1996).

■ Even if a statement fits within one of the four categories, however, no cause of action will exist if the statement can also reasonably be given an innocent construction. The Illinois Supreme Court has recently clarified how courts should apply this rule: "The innocent construction

rule requires courts to consider a written or oral statement in context, giving the words, and their implications, their natural and obvious meaning. If, so construed, a statement 'may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it cannot be actionable *per se.*'" *Bryson,* 174 Ill.2d at 90, 220 Ill.Dec. 195, 672 N.E.2d 1207, *quoting Chapski v. Copley Press,* 92 Ill.2d 344, 352, 65 Ill.Dec. 884, 442 N.E.2d 195 (1982). Whether a statement is defamatory *per se* is a question of law decided by the trial court. *See Quilici v. Second Amendment Foundation,* 769 F.2d 414, 417 (7th Cir.1985).

Plaintiffs allege that the Memorandum fits within three of the four defamation *per se* categories—commission of a criminal offense, want of integrity in employment, and prejudice or lack of ability in one's profession. Defendants contend that the Memorandum does not fit within any of the *per se* categories, and that if it does, it can be innocently construed. The court agrees with defendants that the Memorandum does not impute commission of a criminal offense or lack of ability, but finds that the Memorandum implies that Darovec and Harrington lacked integrity in discharging their employment duties.

## A. Commission of a Criminal Offense

■ In determining whether a statement alleged to be defamatory *per se* imputes commission of a criminal offense, "[i]f the actual words spoken [or written] do not by themselves denote criminal (or unethical) conduct and in common usage have a more flexible and broader meaning than that ascribed by plaintiff, then, as a matter of law, the words are nonactionable as defamation *per se." Kirchner v. Greene,* 294 Ill.App.3d 672, 679, 229 Ill. Dec. 171, 691 N.E.2d 107 (1st Dist.1998) (quoting *Harris Trust & Sav. Bank v. Phillips,* 154 Ill.App.3d 574, 581, 107 Ill. Dec. 315, 506 N.E.2d 1370 (1st Dist.1987)). Plaintiffs contend that the Memorandum implies that they are dishonest and lack integrity, which in turn connotes the crimes of theft, deception, fraud, perjury, embezzlement, or usury. The court disagrees. In "common usage," these words have a significantly "flexible and broader meaning" than plaintiffs' interpretation. *Id.* Dishonesty and lack of integrity do not naturally suggest criminal activity. At worst, the Memorandum more naturally suggests that plaintiffs' dishonesty and lack of integrity caused them to violate company policies, not criminal laws.

## B. Lack of Ability

■ Similarly, nothing in the Memorandum imputes a lack of ability. The Memorandum speaks in terms of plaintiffs' character, not in terms of their ability to perform.

## C. Want of Integrity

With respect to whether the Memorandum imputes a want of integrity in plaintiffs' employment, defendants attempt to construe the statements innocently through a sentence-by-sentence analysis. Defendants note that the Memorandum does not state that Darovec and Harrington are dishonest or lack integrity, but rather that E'ola is committed to honesty and integrity. Defendants argue that the first sentence, when read in conjunction with the second sentence, can be innocently construed to mean that E'ola's commitment to "honesty, integrity and excellent service" requires E'ola to give notice of a distributor's termination to other distributors affected thereby. And finally, defendants offer two innocent constructions of the third sentence, which states that Darovec and Harrington acted in "blatant disregard of their fellow distributors": Darovec and Harrington are "selfish or inconsiderate"; and Darovec and Harrington have difficulty getting along with their fellow distributors.

■ Defendants' sentence-by-sentence attempt to create innocent constructions is not the proper method of analysis. The legal effect of the statements should be considered in the context of the entire Memorandum, rather than independently. *See Bryson,* 174 Ill.2d at 90, 220 Ill.Dec.

195, 672 N.E.2d 1207; *Valentine v. North Am. Co. for Life & Health Ins.*, 60 Ill.2d 168, 170, 328 N.E.2d 265 (1974) ("[T]he legal effect of [a] statement cannot be considered independently from the remainder of [the] conversation, but ... the intent and meaning of the statement must be determined from the context of [the] entire statement."). Moreover, "the innocent construction rule ... does not require courts to strain to find an unnatural but possibly innocent meaning for words where the defamatory meaning is far more reasonable." *Bryson*, 174 Ill.2d at 94, 220 Ill.Dec. 195, 672 N.E.2d 1207. Rather, the court should focus on the "predictable effect the statement had upon those who received the publication." *Taradash v. Adelet/Scott–Fetzer Co.*, 260 Ill.App.3d 313, 317, 195 Ill.Dec. 420, 628 N.E.2d 884 (1st Dist.1993).

 The court concludes that a natural reading of the Memorandum is that Darovec and Harrington are dishonest and lack integrity, as demonstrated in part by their purported numerous policy violations and blatant disregard for their fellow distributors' welfare. As such, the Memorandum squarely fits within the third defamatory *per se* category of words that impute a want of integrity in the discharge of duties of employment.

 Moreover, the Memorandum is not reasonably capable of an innocent construction. In the context of the entire Memorandum, E'ola's specific reference to

"honesty and integrity" can be reasonably construed only as meaning that plaintiffs lacked these qualities. The constructions that E'ola offers are strained and unnatural, and the defamatory meaning is far more reasonable. *See Bryson*, 174 Ill.2d at 94, 220 Ill.Dec. 195, 672 N.E.2d 1207. The court denies defendants' motion to dismiss the libel per se claim.[3]

## IV. DEFAMATION *PER QUOD* CLAIM

 Counts III and V allege that the Memorandum is defamatory *per quod*. A statement is considered defamatory *per quod* if: (1) the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning; or (2) the defamatory character of the statement is apparent on its face, but the statement does not fit within any of the recognized defamation *per se* categories. *See Bryson*, 174 Ill.2d at 103, 220 Ill.Dec. 195, 672 N.E.2d 1207; *Mittelman v. Witous*, 135 Ill.2d 220, 233, 142 Ill.Dec. 232, 552 N.E.2d 973 (1989). To state a defamation *per quod* claim, plaintiffs must adequately plead and prove special damages. *See Bryson*, 174 Ill.2d at 103, 220 Ill.Dec. 195, 672 N.E.2d 1207. If the statement's defamatory character is apparent on its face, plaintiffs need not plead or prove extrinsic facts to explain its defamatory meaning. *See id.*

It is unclear whether plaintiffs contend that the Memorandum falls within the first

---

**3.** The defendants do not address whether the statement in the present case is a statement of fact or is a statement of opinion protected by the First Amendment. A statement receives First Amendment protection only if it cannot be "reasonably interpreted as stating actual facts" about the plaintiff. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 17, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). *See also Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 14–15, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992) (adopting the *Milkovich* test). The Illinois Appellate Court recently held that a statement that an employee was "fired because of incompetence" amounted to libel per se, but concluded that the statement did not support an action for defamation as a matter of law. *See Hopewell v. Vitullo*, 299 Ill.App.3d 513, 517–

21, 233 Ill.Dec. 456, 701 N.E.2d 99 (1998). The *Hopewell* court concluded that the defendant's off-handed statement in a newspaper article that the plaintiff was fired for incompetence was "substanceless rhetoric" and therefore nonactionable opinion. *Id.* at 520, 233 Ill.Dec. 456, 701 N.E.2d 99. The context and content of the statement in the present case distinguishes it from the statement in *Hopewell*. Defendants published their statement in an official memorandum sent to its distributors, and the statement announced that plaintiffs had blatantly disregarded the welfare of their fellow distributors and therefore lacked integrity. This statement is therefore reasonably interpreted as stating actual facts about the plaintiffs.

or second category. As a matter of logic, however, the Memorandum cannot fall into the second category because the complaint simply rewords and restates the defamation *per se* categories in its characterization of the Memorandum's defamatory *per quod* meaning.[4]

The court will assume that plaintiffs allege that the Memorandum falls into the first category of defamatory *per quod* statements. Plaintiffs must therefore plead and prove extrinsic evidence demonstrating the statement's defamatory meaning. *See id.; Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 416, 217 Ill.Dec. 720, 667 N.E.2d 1296 (1996) (dismissing defamation *per quod* count because the complaint "contain[ed] no extrinsic facts establishing the [defendant's] alleged comment was interpreted as being defamatory"). Plaintiffs have failed to do so. Plaintiffs allege nothing extrinsic to the Memorandum to explain its defamatory meaning. The only language which could conceivably be argued as containing extrinsic facts is the allegation that: "[t]he statements found therein were published with the intent that readers, *because they were Distributors of E'Ola and the Memorandum was an "official" condemnation*, would believe...." (Emphasis added.) This information is not extrinsic to the Memorandum. Both the "official" nature of the Memorandum and the fact that the readers were E'ola distributors is readily apparent from the Memorandum itself, as it its titled "OFFICIAL MEMORANDUM TO E'OLA INDEPENDENT DISTRIBUTORS."

Because the complaint fails adequately to allege extrinsic facts demonstrating the Memorandum's defamatory meaning, the

4. While the paragraph's fourth characterization (that plaintiffs are "not to be personally or professionally trusted") is not technically one of the actionable *per se* categories, the court finds it substantively indistinguishable from the "want of integrity" category.

5. Jurisdiction must also comport with the Illinois long-arm statute. However, because the

court need not decide whether plaintiffs have pled special damages. The defamation *per quod* counts are dismissed.

## V. PERSONAL JURISDICTION

Defendant Rogers has filed a separate motion to dismiss for lack of personal jurisdiction. According to his affidavit, Rogers is a Utah resident and has never lived in Illinois, been liable for Illinois taxes, maintained an office or place of business in Illinois, owned real property in Illinois, or conducted any business in Illinois on a personal basis. In addition, Rogers asserts that he published the Memorandum in his capacity as an agent for E'ola and in furtherance of E'ola's interests. Accordingly, Rogers argues that it would violate federal and/or Illinois due process for this court to exercise jurisdiction over him.

On a motion to dismiss, the plaintiff has the burden of making a prima facie showing that personal jurisdiction exists. *See Michael J. Neuman & Assoc. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir.1994). The court accepts all well-pleaded facts in plaintiff's complaint as true unless controverted by defendant's affidavits, *see Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987), and resolves conflicts between the affidavits in plaintiff's favor. *See id.*

This court has jurisdiction over a non-consenting, non-resident defendant in a diversity action only if an Illinois state court would have jurisdiction. *See McIlwee v. ADM Industries, Inc.*, 17 F.3d 222, 223 (7th Cir.1994). An Illinois state court has jurisdiction if jurisdiction comports with the Illinois Constitution and the United States Constitution. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997).[5]

long-arm statute grants jurisdiction "on ... any basis now or hereinafter permitted by the Illinois Constitution and the Constitution of the United States," 735 ILCS 5/2–209(c), the three inquiries "collapse into two constitutional inquiries—one state and one federal." *RAR*, 107 F.3d at 1276

## A. Illinois Constitution

Personal jurisdiction must comply with the Illinois Constitution, or more specifically, Illinois due process. While the Illinois Supreme Court has offered little guidance as to how state due process differs from federal due process in the personal jurisdiction context, it has explained that "jurisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 275, 152 Ill.Dec. 384, 565 N.E.2d 1302 (1990). Rogers argues that it would violate Illinois due process to require him to defend an action in Illinois for events arising out of his activities as an agent of E'ola and in furtherance of E'ola's interests. Specifically, he argues that the "fiduciary shield" doctrine prevents this court from exercising jurisdiction over him.

■ In certain circumstances, Illinois due process mandates a "fiduciary shield" defense to personal jurisdiction as a matter of law. *See Rollins*, 141 Ill.2d at 280, 152 Ill.Dec. 384, 565 N.E.2d 1302. The fiduciary shield doctrine denies personal jurisdiction over an individual whose "presence and activity in the state in which the suit is brought were solely on behalf of his employer or principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir.1994). The rationale underlying the doctrine is that, "[i]t is unfair and unreasonable . . . to assert personal jurisdiction over an individual who [sought] the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Rollins*, 141 Ill.2d at 280, 152 Ill.Dec. 384, 565 N.E.2d 1302.

■ Rogers's argument, however, ignores two important limitations to the shield: (1) the shield is removed if the individual's personal interests motivate his actions, *see Rice*, 38 F.3d at 912; and (2) the shield generally does not apply when the individual's actions are discretionary.

*See Brujis v. Shaw*, 876 F.Supp. 975, 978 (N.D.Ill.1995). As noted, the fiduciary shield denies personal jurisdiction if the individual's actions were "solely on behalf of his employer." *Rice*, 38 F.3d at 912. If the individual "was acting *also* on his own behalf—to serve his personal interests," the shield does not apply. *Id.* (emphasis added). The personal interests need not be pecuniary—they may be dislike or malice towards the plaintiff. *See id.; Roy v. Austin Co.*, 1994 U.S. Dist. LEXIS 16254 at *6–7 (N.D.Ill.1994) (holding, on a motion to dismiss, that plaintiff's allegation that defendant's actions were "without justification based on the legitimate business interests of [the employer], and were performed maliciously" was sufficient to prove actions taken to serve personal interests). However, a defendant who dislikes or acts maliciously towards a plaintiff will not necessarily lose the fiduciary shield. Instead, the dislike must "have created or exacerbated the harm to the [plaintiff]." *Rice*, 38 F.3d at 912.

■ The complaint alleges that Rogers intended to injure plaintiffs and "acted with actual malice in preparing, publishing, and disseminating the false Official Memorandum, thereby entitling plaintiffs to punitive damages." Interpreting the allegations in the complaint in favor of plaintiffs, the allegations of "intent to injure" and "actual malice" sufficiently allege that Rogers's personal interests motivated the defamatory statements in the Memorandum. Had Rogers been acting "solely" on E'ola's behalf, he likely would have communicated plaintiffs' termination without attacking plaintiffs' honesty and integrity. Under this interpretation, Rogers's decision to act with actual malice "created or exacerbated the harm" to plaintiffs. *Rice*, 38 F.3d at 912. Accordingly, the fiduciary shield doctrine does not prevent the court from assuming jurisdiction.

Defendants' affidavits fail to rebut plaintiffs' allegation. While Rogers says that he published the Memorandum in furtherance of E'ola's interests, he does not say

that he published it "solely" in furtherance of E'ola's interests. In addition, the vice-president's affidavit merely states that Rogers had the "authority" to publish the Memorandum and to communicate all of the information contained in it. While this suggests that E'ola is liable for Rogers's actions, it does not mean that Rogers is off the hook.

■ Rogers also overlooks the "discretion" factor, another limitation on the fiduciary shield doctrine. The shield generally should not apply where the "employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction." *Brujis v. Shaw*, 876 F.Supp. 975, 978 (N.D.Ill. 1995); *see also Ruca Hardware, Ltd. v. Chien*, 1994 WL 548196 at *3, 1994 U.S. Dist. LEXIS 14064 at *12 (N.D.Ill.1994). In establishing the fiduciary shield doctrine in *Rollins*, the Illinois Supreme Court suggested that the element of compulsion involved in an employee's contacts with Illinois made it unfair later to assert jurisdiction over him. *See Rollins*, 141 Ill.2d at 279–80, 152 Ill.Dec. 384, 565 N.E.2d 1302. *Rollins* involved a wrongful arrest suit brought against a Baltimore, Maryland officer who effectuated an arrest in Illinois. Stressing the absence of discretion that the circumstances involved, the Illinois Supreme Court stated:

> Because [the police officer's] conduct in Illinois was a product of, and was motivated by, his employment situation and not his personal interests, we conclude that it would be unfair to use this conduct to assert personal jurisdiction over him as an individual.... In practical terms, an employee, especially one in [the police officer's] position, has little or no alternative besides unemployment when ordered to enter another State to carry out the wishes of his employer. [*Id.*]

Rogers has not asserted that E'ola compelled him to publish the Memorandum. Nor does he contend that he did not have complete discretion as to its contents. Rather, Rogers's and E'ola's affidavits suggest that he had significant discretion. Rogers had authority to terminate independent distributors, inform distributors of the termination of a fellow distributor, communicate all of the information contained in the Memorandum, and publish the Memorandum. Because Rogers's choice of words is the subject of this defamation suit, it is evident that Rogers had the discretion to "commit the acts that subject him to long arm jurisdiction." *Brujis*, 876 F.Supp. at 978.

Plaintiffs have adequately alleged personal jurisdiction over Rogers under Illinois law. Should discovery reveal evidence that Rogers was acting solely on behalf of E'ola or that his discretion was limited, he may raise the issue again.

## B. United States Constitution

■ As noted, jurisdiction must also comport with the United States Constitution. Under the Fourteenth Amendment's Due Process Clause, an Illinois court may exercise personal jurisdiction over a nonresident defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see RAR*, 107 F.3d at 1277. The meaning of this standard depends on whether the state asserts "general" or "specific" jurisdiction. *See RAR*, 107 F.3d at 1277. General jurisdiction refers to jurisdiction over a defendant where the defendant has "continuous and systematic general business contacts" with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Id.* at 414, n. 8, 104 S.Ct. 1868. In a specific jurisdiction case, the court must decide whether the defendant has "purposefully established minimum

contacts within the forum State," and whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances. *Burger King v. Rudzewicz,* 471 U.S. 462, 467–77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ The court has specific jurisdiction over Rogers. This defamation suit arises out of Rogers's contacts with Illinois—his publication of an allegedly defamatory Memorandum which adversely impacted the interests of plaintiff's Illinois business. Under these circumstances, personal jurisdiction is fair and reasonable.

Given that the court's jurisdiction over Rogers complies with the Illinois and United States constitutions, Rogers's motion to dismiss for lack of personal jurisdiction is denied.

## CONCLUSION

Defendants' motion to dismiss is granted as to Counts I, III, and V and is denied with respect to Counts II and IV. Rogers's motion to dismiss for lack of personal jurisdiction is likewise denied. Plaintiffs are ordered to file a second amended complaint conforming to this opinion on or before April 5, 1999. Defendants shall respond thereto on or before April 12, 1999.

This matter is set for a report on status April 20, 1999, at 9:00 a.m., at which time the parties are directed to present a definitive discovery plan.