ALCOA, INC., Individually and as
Successor–in–Interest to Reynolds
Metal Company, Appellant

v.

Barbara BEHRINGER and Leroy
Behringer, Appellees.

No. 05–06–00136–CV.

Court of Appeals of Texas,
Dallas.

Oct. 11, 2007.

Penelope E. Nicholson, Marie R. Yeates, Jason Dunahoe, Vinson & Elkins L.L.P., Houston, TX, for Appellant.

C. Andrew Waters, Jeffrey B. Simon and Charles S. Siegel, Water & Kraus, LLP, Loren Jacobson, Dallas, TX, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and LAGARDE.

## OPINION ON MOTION FOR REHEARING

Opinion by Justice LAGARDE.[1]

In their motion for rehearing, appellants advised this court that an opinion of our sister court referenced at the conclusion of our prior opinion was subsequently withdrawn by that court.[2] We therefore withdraw our earlier opinion to omit reference to our sister court's withdrawn opinion. This is now the opinion of the court. The motion for rehearing is overruled.

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

2. Specifically, the opinion in *Exxon Mobil Corp. v. Altimore*, No. 14–04–01133–CV, 2007 WL 1174447, —— S.W.3d —— (Tex.App.-Houston [14th Dist.] April 19, 2007) was withdrawn on the court's own motion on August 9, 2007. That case has been set for re-submission.

Appellant Alcoa, Inc. appeals the judgment on a jury verdict in favor of appellees Barbara Behringer and Leroy Behringer, for damages they allege arose because Mrs. Behringer contracted mesothelioma by breathing asbestos dust brought home in the 1950s on her then-husband's work clothes. Under the facts of this case, we conclude Alcoa did not owe a legal duty to Mrs. Behringer. Accordingly, we reverse the judgment of the trial court and render judgment that appellees take nothing on their claims against Alcoa.

## FACTUAL BACKGROUND

Mrs. Behringer was married to John Alford from 1951 until 1959. During four years of their marriage, from 1953 until 1955, and from 1957 until 1959, Alford worked for Alcoa. Specifically, Alford worked in the "potrooms" at Alcoa's Rockdale, Texas, plant in which aluminum ore was made by smelting raw materials in large industrial pots, each approximately twelve-feet wide, twenty-feet long, and over three-feet tall. The pots were lined with insulation blocks containing asbestos. According to Alford's testimony, the "pot-liners" at Alcoa routinely removed the insulation with jackhammers and replaced it, a process that took approximately three days per pot. In the 1950s, Alcoa's pot-rooms contained over 800 pots, divided into roughly 72 pots per potroom. Each potroom was a semi-enclosed area that measured about three football fields long and one football field wide with a ceiling about one hundred feet high. The potrooms had large overhead doors on each end and ventilators on the roof, which were all typically left open for ventilation.

Alford was not a pot-liner, but he worked near them "on and off" and was exposed to the white dust created during the jackhammering phase of the insulation-removal process. It is undisputed Alford's work clothes were dusty with white powder. However, it is also undisputed the two raw materials used to smelt aluminum ore—lumina and floride—are also white powders. There is no evidence in the record of how much of the dust on Alford's clothes was asbestos as opposed to alumina or floride. At the end of the day, Alford removed his work clothes at Alcoa, showered in the changing room, and took his work clothes home in a bag. Every other day during the four years at issue, Mrs. Behringer (then Mrs. Alford) would take Alford's dusty work clothes outside, shake them off, and then bring them back inside to wash them in the family's washing machine. Although Alford continued to work for Alcoa after 1959, as a result of their divorce, Mrs. Behringer no longer came in contact with his clothing after that time.[3] Mrs. Behringer was diagnosed with pleural mesothelioma in November 2003.[4]

## PROCEDURAL HISTORY

In 2004, appellees sued Alcoa and other defendants alleging Mrs. Behringer's

---

**3.** Alford continued to work in Alcoa's potrooms until 1970. After that, he worked at Alcoa as a bag changer until he retired in 1982. Alford testified he believed he was exposed to significant amounts of asbestos during the years 1970 to 1982. Alford, who smoked two or more packs of cigarettes each day for forty years, died on February 2, 2002. The cause of death on his death certificate is respiratory failure due to pulmonary emphysema, with asbestosis listed as a contributing factor.

**4.** Pleural mesothelioma is a rare but almost universally fatal type of cancer that develops in the lining of the lungs and then spreads in a diffuse manner into the surrounding areas of the body. Dr. Vincent Roggli, appellees' expert witness in pathology, testified that seventy percent of all mesothelioma cases in women are related to asbestos exposure. Dr. Robert Morgan, Alcoa's expert witness in epidemiology, testified that five to twenty percent of all mesothelioma cases in women are related to asbestos exposure.

mesothelioma resulted from asbestos exposure caused by their wrongful acts. Appellees' petition against Alcoa alleged Alcoa failed to provide adequate safety measures and protective gear and failed to adequately warn Alford and Mrs. Behringer of the dangers of asbestos exposure.

By the time of trial, Alcoa was the only remaining defendant. At the close of the evidence, the case was submitted to the jury as a negligence case[5] and the jury returned a verdict against Alcoa on counts of negligence and gross negligence. The jury awarded Mrs. Behringer $12 million in actual damages and $2 million in exemplary damages.[6] The jury awarded Mr. Behringer $1.5 million in actual damages for loss of household services and loss of consortium, and $2 million in exemplary damages. After applying settlement credits and the punitive damages cap, the trial court entered judgment on the jury verdict, including prejudgment interest, in the amount of $15,593,340.05. The trial court denied Alcoa's post-trial motions for judgment notwithstanding the verdict, to disregard jury findings, for new trial, for remittitur, and/or to modify, correct, or reform the judgment. Alcoa timely perfected appeal.

### APPEAL

In fourteen issues, Alcoa argues the trial court erred when it entered a final judgment in favor of appellees. In its second issue, Alcoa asks whether Alcoa owed a legal duty to appellees under the facts of this case. Within this issue, Alcoa argues it did not owe a legal duty to appellees because in the 1950s Alcoa could not foresee the harm of non-occupational asbestos

exposure. Because resolution of the legal duty issue is dispositive of this appeal, we need not address Alcoa's remaining issues. TEX.R.APP. P. 47.1.

### THE ELEMENTS OF NEGLIGENCE AND GROSS NEGLIGENCE

To establish a claim for negligence, a plaintiff must prove (i) the existence of a legal duty, (ii) a breach of that duty, and (iii) damages proximately caused by that breach. *Kroger Co. v. Elwood,* 197 S.W.3d 793, 794 (Tex.2006). To establish gross negligence, a plaintiff must also prove by clear and convincing evidence two additional elements: (i) that from the actor's standpoint, the act or omission complained of involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (ii) that the actor had actual subjective awareness of the risk involved but nevertheless proceeded in conscious indifference of the rights and safety or welfare of others. TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a)(3) (Vernon 2005); *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 785 (Tex.2001). Duty is the threshold inquiry in a negligence claim. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995) ("The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff."). If there is no legal duty, liability for negligence cannot exist. *See Thapar v. Zezulka,* 994 S.W.2d 635, 637 (Tex.1999).

### STANDARD OF REVIEW

The existence of a legal duty is a question of law for the court to decide

---

**5.** In its brief, Alcoa generally complains that appellees are "seeking to hold a premises owner liable for an unforeseeable off-premises injury." Alcoa, however, did not object to the jury charge, which was submitted on negligence and gross negligence. Accordingly,

we do not address the issue of whether appellees' claims were properly couched in negligence, as opposed to premises liability.

**6.** Mrs. Behringer died on January 25, 2006.

from the particular facts surrounding the occurrence in question. *Military Highway Water Supply Corp. v. Morin,* 156 S.W.3d 569, 572 (Tex.2005). Because the existence of a legal duty is a pure question of law, we apply a de novo standard of review. *Loram Maint. of Way, Inc. v. Ianni,* 141 S.W.3d 722, 727 (Tex.App.-El Paso 2004), *rev'd on other grounds,* 210 S.W.3d 593 (Tex.2006) (citing *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.,* 8 S.W.3d 309, 312 (Tex.1999)).

## APPLICABLE LAW

▬ To determine whether a defendant is under a legal duty, Texas courts consider several interrelated factors, including the risk, foreseeability, and likelihood of injury, weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). Of these factors, the foremost consideration is whether the risk is foreseeable. *Greater Houston Transp. Co.,* 801 S.W.2d at 525. Foreseeability means that an actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Isbell v. Ryan,* 983 S.W.2d 335, 339 (Tex.App.-Houston [14th Dist.] 1998, no pet.). In other words, "there is neither a legal nor a moral obligation to guard against that which cannot be foreseen in the light of common or ordinary experience." *J.R. Beadel & Co. v. De La Garza,* 690 S.W.2d 71, 73 (Tex. App.-Dallas 1985, writ ref'd n.r.e.) (quoting *Hadaway v. Lone Star Gas Co.,* 355 S.W.2d 590, 592 (Tex.Civ.App.-Fort Worth 1962, no writ)). Foreseeability is not measured by hindsight, but instead by what the actor knew or should have known at the time of the alleged negligence. *Timberwalk Apts. v. Cain,* 972 S.W.2d 749, 757 (Tex.1998).

▬ The Texas Supreme Court uses a two-prong test for foreseeability: (i) that the injury be of such a general character as might reasonably have been anticipated; and (ii) that the injured party should be so situated with relation to the wrongful act that injury to him or one similarly situated might reasonably have been foreseen. *Mellon Mortgage Co. v. Holder,* 5 S.W.3d 654, 655 (Tex.1999) (plurality opinion) (citing *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 551, (Tex. 1985)). "Stated more broadly, we determine both the foreseeability of the general danger and the foreseeability that a particular plaintiff—or one similarly situated—would be harmed by that danger." *Id.*

## ANALYSIS

To determine whether Alcoa owed Mrs. Behringer[7] a duty, we must first determine whether the evidence introduced at trial establishes that it was generally foreseeable in the 1950s, to an ordinary employer that used, but did not manufacture, asbestos,[8] that intermittent, non-occupa-

---

7. In this case, the duty to Mr. Behringer, if any, would necessarily arise from and be dependent on the duty, if any, to Mrs. Behringer. Because we conclude Alcoa did not owe a legal duty to Mrs. Behringer, we necessarily conclude Alcoa did not owe a derivative legal duty to Mr. Behringer.

8. We do not compare Alcoa to asbestos manufacturers because they, unlike companies who merely used asbestos products, are subject to strict-liability claims that do not require proof of foreseeability. *See, e.g., Gen. Motors Corp. v. Saenz,* 873 S.W.2d 353, 357 (Tex.1993) (proof of producing cause in products-liability case requires lower burden than proximate cause in negligence case, because foreseeability is not required).

tional exposure to asbestos could put people at risk of contracting a serious illness.

In this case, the record reflects that the general danger of prolonged occupational asbestos exposure to asbestos-manufacturing workers was known at least by the mid–1930s. But in this case, the issue is not when it was generally known that substantial, prolonged exposure to asbestos in the workplace was dangerous to asbestos workers. Instead, the pivotal issue here is when it became generally known that non-occupational exposure to asbestos could be dangerous.

The first epidemiological study of the increased risk of disease resulting from minimal, intermittent *occupational* exposure was published in 1964. That study tracked building trades insulation workers (as opposed to asbestos-manufacturing workers) and noted an increased incidence of mesothelioma and other cancers. The first case study of *non-occupational* asbestos exposure was published in 1965. That study observed patients hospitalized in London with a diagnosis of mesothelioma and noted that out of the 76 patients from whom full occupational and residential histories were obtained, 40 (52.6%) "gave a history of occupational or domestic (living in the same house as an asbestos worker) exposure." Several witnesses also testified in this case about the regulations instituted in 1972 by the Occupational Safety and Hazard Administration (OSHA) that expressly mandated, for the first time, restrictions on allowing asbestos to be carried home on clothing. The record in this case also reflects that the first epidemiological study of the link between females with mesothelioma and non-occupational asbestos exposure was published in 1978.

■ Appellees rely on specific evidence to support their claim that Mrs. Behringer's injury was foreseeable to Alcoa in the 1950s. First, they point to a series of case reports in the 1930s concerning respiratory disease found in asbestos workers. Second, appellees cite a 1948 internal Alcoa memorandum entitled "Safety Clothing and Equipment" as further evidence of Alcoa's knowledge in the 1950s of the danger of non-occupational exposure to asbestos. That memorandum concerned employee use of respirators in connection with work in proximity to several substances, including asbestos. The purpose of the memorandum was to approve the use of a particular list of respirators and encourage use of those respirators. The memorandum also cited reports that employees were resistant to using the new respirators because they were found to be "uncomfortable, heavy and annoying." To address this resistance, the memorandum stated:

> We urge you to exert your influence to persuade the employees to adopt the use of Bureau of Mines approved respirators. We recognize the difficulty of converting people to the use of a new type respirator, particularly when it is not as comfortable as the type they have been wearing.

. . .

> As an illustration of how this problem might be approached we cite the case at one of our locations where exposure to a chemical product necessitated a complete change of clothing and a shower following the day's work. Employees objected to this requirement and refused to cooperate with Management. Their union committee was asked to attend a meeting for a discussion of the subject and were tactfully told that a health hazard existed if employees wore their clothes home from work and if they failed to bathe following this exposure. When the seriousness of the situation was presented in a business like manner and was fully understood and appreciated by the union committee and employees, their attitude changed and the prob-

lem was solved. The significant point was, that when the employees were informed and recognized the merits of the program they cooperated. We believe in the case of approved respiratory equipment they will also cooperate if we use the correct approach.

It is undisputed that the "chemical product" referenced in Alcoa's 1948 memorandum was not asbestos. It is also undisputed asbestos is a mineral, not a chemical. Nevertheless, appellees argue that this memorandum evidences Alcoa's general knowledge that "contaminants could be taken home." Knowledge of the general danger of contact-poisoning from "chemical products," however, does not amount to knowledge of the hazards of non-occupational exposure to asbestos. Appellees also cite to the Walsh–Healey Public Contracts Act in effect in the 1950s as further proof of foreseeability. The Walsh–Healey Act was enacted to protect "the health and safety of employees" who worked in industries that furnished "materials, supplies, articles, and equipment in any amount exceeding $10,000." The Walsh–Healey Act, however, addressed only workplace safety and mandated that "*workers* shall not be exposed to concentrations of atmospheric contaminants hazardous to health." It did not put employers on notice of the hazards of non-occupational exposure to asbestos.

Appellees also cite to a regulation effective in Texas as of July 1958 entitled "Maximum Permissible Concentrations of Atmospheric Contaminants in Places of Employment." As the name implies, however, this regulation was also limited to protecting *workers* from excessive *occupational* exposure in the workplace. It did not constitute notice to employers of the hazards of non-occupational exposure to asbestos.

Based on the record in this case, the danger of non-occupational exposure to asbestos dust on workers' clothes was neither known nor reasonably foreseeable to Alcoa in the 1950s. Accordingly, under the facts of this case, the analysis fails the test set out by the Texas Supreme Court in *Mellon Mortgage Co.*, 5 S.W.3d at 655.

Foreseeability is the "central question" and the "foremost and dominant consideration" in a legal duty analysis. *Greater Houston Transp.*, 801 S.W.2d at 525. Consequently, we conclude that the other factors relevant to establishing a duty—the risk, the likelihood of injury, the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant—cannot, as a matter of law, outweigh a complete lack of foreseeability of any danger to one in Mrs. Behringer's situation.

### CONCLUSION

For all of these reasons, we reverse the judgment of the trial court and render judgment that appellees take nothing on their claims against Alcoa.