NOTICE

Decision filed 06/10/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0346

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| CYNTHIA SIMPKINS, Individually and as Special Administrator for the Estate of Annette Simpkins, Deceased, | ) Appeal from the<br>) Circuit Court of<br>) Madison County. |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 07-L-62 |
| | ) |
| CSX CORPORATION and CSX TRANSPORTATION, INC., | ) |
| | ) Honorable |
| | ) Daniel J. Stack, |
| Defendants-Appellees. | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

According to the plaintiff's complaint, Annette Simpkins was exposed to asbestos fibers brought home on the work clothes of her husband, Ronald Simpkins. Ronald Simpkins was exposed to asbestos while working for various employers, including the defendants' predecessor, the B&O Railroad. Annette Simpkins died of mesothelioma cancer in April 2007 while the instant action was pending in the trial court. Her daughter, Cynthia Simpkins, was appointed as the special administrator of Annette's estate and was substituted as the plaintiff. She now appeals an order dismissing three counts of the complaint against the defendants, CSX Corp. and CSX Transportation, Inc. (collectively referred to as CSX). The counts were dismissed pursuant to a motion under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)), on the grounds that an employer has no duty to protect the family of its employee from the dangers of asbestos brought home on the work clothes of the employee. We find that such a duty does exist. Accordingly, we reverse and remand for further proceedings.

1

The fact that this case comes to us on a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure limits our consideration to the matters asserted in the pleadings. The supreme court has explained as follows:

"A section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2002)) challenges the legal sufficiency of a complaint based on defects apparent on its face. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 364[, 821 N.E.2d 1099, 1110] (2004). Therefore, we review *de novo* an order granting or denying a section 2-615 motion. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228[, 785 N.E.2d 843, 846] (2003). In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 96-97[, 820 N.E.2d 455, 457] (2004). We also construe the allegations in the complaint in the light most favorable to the plaintiff. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 11-12[, 828 N.E.2d 1155, 1161] (2005). Thus, a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Canel v. Topinka*, 212 Ill. 2d 311, 318[, 818 N.E.2d 311, 317] (2004)." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048, 1053 (2006).

For purposes of a motion to dismiss pursuant to section 2-615, the court may not consider affidavits or other supporting materials. *Kirchner v. Greene*, 294 Ill. App. 3d 672, 677, 691 N.E.2d 107, 112 (1998); *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1068, 603 N.E.2d 1215, 1218-19 (1992). Unlike a section 2-619 motion or a section 2-1005 summary judgment motion (735 ILCS 5/2-619, 2-1005 (West 2006)), a section 2-615 motion relies solely on the pleadings rather than on the underlying facts. It is for that reason that the plaintiff must prevail if sufficient facts are pled which, if proved,

2

would entitle her to relief.

The scope of our inquiry is confined to the issue of whether the plaintiff's complaint should have been dismissed on the basis that Ronald Simpkins' employer did not owe a duty of care to prevent Annette from being exposed to asbestos brought home on her husband's work clothes and body. We make no determination on the questions of whether a breach of that duty occurred or whether such a breach was a proximate cause of Annette's death. For purposes of this opinion, we must assume that the facts contained in the plaintiff's complaint are true.

The plaintiff's complaint states that Annette and Ronald Simpkins were married from 1951 until 1965, after which time they divorced. For much of that time, Ronald was exposed to asbestos in his work as a steelworker, welder, railroad fireman, and laborer. He worked in these capacities for several employers, including the B&O Railroad (the defendants' predecessor), where he worked from 1958 to 1964.

On January 19, 2007, Annette Simpkins filed the original complaint in this matter, alleging that she had contracted mesothelioma cancer due to exposure to asbestos brought home on Ronald's body and work clothes during their marriage. This is what is commonly referred to as "take-home" asbestos exposure. (We note that Annette Simpkins also alleged take-home exposure to asbestos through her father and direct exposure through her own employment. Those allegations, however, are not at issue in this appeal.) The complaint named numerous defendants, including asbestos manufacturers and former employers. The three counts of the complaint here at issue named only CSX (as a successor to the B&O Railroad) and the Dow Chemical Company, where Ronald Simpkins worked from 1964 through the end of the parties' marriage in 1965. Count VII of the complaint alleged that both former employers negligently failed to take precautions to protect Ronald Simpkins' family from take-home asbestos exposure, count VIII alleged that both defendants were

3

strictly liable for engaging in an ultrahazardous activity, and count IX alleged willful and wanton conduct on the part of both employers.

On February 28, 2007, CSX filed a section 2-615 motion to dismiss the three counts of the complaint against it. CSX argued that under Illinois law an employer does not owe any duty to the families of its employees. This was the sole basis for dismissal that it asserted. We note that the Dow Chemical Company did not join CSX's motion or file its own motion to dismiss and is not a party to this appeal.

On April 2, 2007, Annette Simpkins died. On May 2, her daughter, Cynthia, was appointed the special administrator of Annette's estate. Cynthia was later substituted as the plaintiff in this litigation.

On May 18, 2007, the court heard arguments on CSX's motion to dismiss. CSX argued that because no Illinois court has previously held that employers owe a duty to the families of employees who are exposed to asbestos, allowing the plaintiff's case to go forward against CSX would be creating a new cause of action. Thus, according to CSX, it is an issue that must be determined by an appellate court or the legislature, not by a trial court. We note that CSX implicitly acknowledged that no Illinois court has previously held that employers do not owe a duty to protect families from take-home asbestos exposure either. CSX's attorney pointed out that the plaintiff could appeal from an order dismissing her case and that "if [s]he can create a new cause of action, [s]he can create a new cause of action."

In response, the plaintiff argued that asking the court to recognize a duty where there are no previous cases on point is not the same as asking the court to create a new cause of action. She further argued that the Illinois Supreme Court has expressed a broad view of duty, and she emphasized that finding that a duty exists is not the same thing as finding that the duty has been breached or that the defendant is liable. In rebuttal, the defendants argued

4

that holding there is a duty to protect family members from take-home asbestos exposure would expand employers' liability under the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 *et seq.* (2000)) and that the plaintiff's remedy in this case is against the asbestos manufacturers, not against the employer. The court told the plaintiff's counsel: "I have to be candid with you. It sounds like a great argument for the [s]upreme [c]ourt." The court then granted the motion to dismiss and told the parties it would sever the claims against CSX from the remainder of the plaintiff's claims and enter a finding, pursuant to Supreme Court Rule 304 (210 Ill. 2d R. 304), making its dismissal a final and appealable order. The court entered a written order to that effect the same day. The plaintiff then timely filed the instant appeal.

We are perplexed by CSX's argument that somehow the trial court was unable to decide the issue before it, just as we are perplexed by the judge's apparent acquiescence to that argument. Our legal system is one of common law, which by its very definition develops through the case law decisions of the courts. See Black's Law Dictionary 276-77 (6th ed. 1990). The trial judge has both the authority and the duty to decide disputes before it. See *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60, 73 (1803) (explaining, "It is emphatically the province and duty of the judicial department to say what the law is"). There is no prerequisite that an appellate court decide cases of first impression. Nor does the absence of statutory or regulatory law constrain the court's power to decide disputes before it. See Ill. Const. 1970, art. VI, §9 (trial courts have jurisdiction over "all justiciable matters").

Before turning to the merits of the parties' contentions, we note that the motion to dismiss was directed at three different counts of the plaintiff's complaint. All three counts, however, involved allegations that the risk of harm to Annette Simpkins was foreseeable. On appeal, the parties do not distinguish the three counts. Thus, we, too, will discuss them together.

5

As both parties note, no Illinois case is directly on point. Both parties cite decisions of other jurisdictions, which reach opposite results. The plaintiff argues that general principles of duty under Illinois law support finding a duty to protect family members in take-home asbestos cases. CSX urges us to follow those jurisdictions that have not found a duty to protect family members from take-home asbestos exposure, arguing that finding such a duty would lead to unlimited liability. We agree with the plaintiff. Because we find that ordinary principles of Illinois negligence law support this conclusion, we need not consider the plaintiff's alternative argument based on a transferred-negligence theory (see *Renslow v. Mennonite Hospital, Inc.*, 67 Ill. 2d 348, 367 N.E.2d 1250 (1977)), nor need we consider CSX's related argument that the common law cannot expand FELA liability to a nonemployee spouse. We also take note that in light of the supreme court's recent decision in *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 920 N.E.2d 220 (2009), we do not believe that a transferred-negligence theory provides viable support for the plaintiff's argument regarding duty.

Under Illinois law, the existence of a duty depends on whether the parties stand in such a relationship to each other that the law imposes upon the defendant an obligation to act in a reasonable manner for the benefit of the plaintiff. *Marshall*, 222 Ill. 2d at 436, 856 N.E.2d at 1057. The term "relationship" does not necessarily mean a contractual, familial, or other particular special relationship. See *Marshall*, 222 Ill. 2d at 441, 856 N.E.2d at 1060 (explaining that whether or not the law imposes a duty on a defendant for the benefit of a plaintiff depends on " ' "the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection" ' " (quoting *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 527, 513 N.E.2d 387, 396 (1987) (quoting W. Keeton, Prosser & Keeton on Torts §53, at 358 (5th ed. 1984)))). As the supreme court has noted, " 'the concept of duty in negligence cases is very involved, complex[,] and indeed

6

nebulous.' " *Marshall*, 222 Ill. 2d at 435, 856 N.E.2d at 1056-57 (quoting *Mieher v. Brown*, 54 Ill. 2d 539, 545, 301 N.E.2d 307, 310 (1973)). Moreover, every person owes every other person the duty to use ordinary care to prevent any injury that might naturally occur as the reasonably foreseeable consequence of his or her own actions. See *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 291, 864 N.E.2d 227, 238 (2007).

Whether a relationship exists between the parties that will justify the imposition of a duty depends upon four factors: (1) the foreseeability of the harm, (2) the likelihood of the injury, (3) the magnitude of the burden involved in guarding against the harm, and (4) the consequences of placing on the defendant the duty to protect against the harm. *Marshall*, 222 Ill. 2d at 436-37, 856 N.E.2d at 1057; *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140-41, 554 N.E.2d 223, 226-27 (1990). Our determination of duty is informed by public policy considerations. *Marshall*, 222 Ill. 2d at 436, 856 N.E.2d at 1057. As a matter of public policy, it is best to place the duty to protect against a harm on the party best able to prevent it. See *Court v. Grzelinski*, 72 Ill. 2d 141, 150-51, 379 N.E.2d 281, 285 (1978).

Applying these principles, we find the out-of-state cases that have found a duty in similar circumstances to be more persuasive than those that have not. We find two cases particularly helpful. The Tennessee Supreme Court's decision in *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347 (Tenn. 2008), offers a thoughtful and persuasive discussion of the role the parties' relationship should play in determining the existence of a duty, while the New Jersey case of *Olivo v. Owens-Illinois, Inc.*, 186 N.J. 394, 895 A.2d 1143 (2006), cited by the plaintiff (and relied upon in many of the other cases she cites), required the New Jersey Supreme Court to apply general principles of duty similar to Illinois's to circumstances nearly identical to those present in the instant case.

*Satterfield* involved a 25-year-old woman who died as a result of mesothelioma cancer, which she contracted after being exposed to asbestos fibers brought home on her

7

father's work clothes during her childhood. *Satterfield*, 266 S.W.3d at 351-52. In rejecting the father's employer's argument that it owed no duty to the daughter because it did not have a special relationship with her, the Tennessee Supreme Court first examined general principles of negligence law. The court explained that all people have a duty to others to refrain from actions " 'which involve[] an unreasonable risk of harm' " to others. *Satterfield*, 266 S.W.3d at 355 (quoting Restatement (Second) of Torts §302 (1965)). Generally, however, people have no duty "to protect others from dangers or risks except for those that they themselves have created." *Satterfield*, 266 S.W.3d at 357. This is what is known as the "no duty to act" rule. *Satterfield*, 266 S.W.3d at 357 (citing Restatement (Second) of Torts §314 (1965)). These propositions, embodied in the Second Restatement of Torts, are not unique to Tennessee law, and as previously explained, they are the law in Illinois also.

The *Satterfield* court then went on to explain the role that an analysis of the relationship between the parties should play in a duty analysis under these general principles. It explained that exceptions to the no-duty-to-act rule exist where special recognized relationships exist, either between the plaintiff and the defendant or between the defendant and a third party whose actions create the risk to the plaintiff. *Satterfield*, 266 S.W.3d at 359. However, the court found that neither the no-duty-to-act rule nor these exceptions were applicable to the facts before it. This is because the case did not involve a situation where the father's employer simply failed to act to protect the daughter from harm caused by a third party; rather, it involved "the employer's own misfeasance–its injurious affirmative act of operating its facility in such an unsafe manner that dangerous asbestos fibers were transmitted outside the facility" on its employees' work clothes. *Satterfield*, 266 S.W.3d at 364. The court, therefore, found it unnecessary to consider whether the employer had any additional duties to the daughter flowing from a special relationship. *Satterfield*, 266 S.W.3d at 364.

8

At least one other court has followed the Tennessee court's approach. See *Rochon v. Saberhagen Holdings, Inc.*, No. 58579-7-I, slip op. at 12 (Wash. App. August 13, 2007) (unpublished opinion)(finding that a duty to prevent harm from take-home asbestos exposure can arise "even in the absence of any special relationship" if the injury is foreseeable). We find this approach persuasive. For one thing, as mentioned, the *Satterfield* court described general principles of negligence law embodied in the Second Restatement of Torts. Also as previously mentioned, in Illinois, as in Tennessee, all parties owe to all others the duty to take reasonable precautions to prevent their actions from harming all others. To find that an employer whose workers are exposed to asbestos owes no duty to protect others from exposure–assuming the exposure is both foreseeable and preventable without undue burden–merely because the others do not have any particular special relationship with the employer (such as an employee or a business invitee) would defy logic and lead to grossly unfair results. This is not to say the employer has unlimited liability to all the world; as we will discuss later in this opinion, liability will be limited by foreseeability.

With this in mind, we turn our attention to *Olivo*, where the New Jersey Supreme Court found the risk of take-home asbestos exposure foreseeable in a case of a woman who died of mesothelioma cancer after being exposed to asbestos brought home on her husband's work clothes. Under New Jersey law, as under Illinois law, a duty analysis involves both a determination of whether the injury was foreseeable and a consideration of public policy. *Olivo*, 186 N.J. at 403, 895 A.2d at 1148. We find the court's analysis of both factors persuasive. We focus now on its analysis of the foreseeability of the harm.

In *Olivo*, as here, one of the husband's employers argued that it owed no duty to protect its former employee's wife from take-home asbestos exposure. *Olivo*, 186 N.J. at 400, 895 A.2d at 1146-47. When considering the foreseeability of the harm, the *Olivo* court explained as follows: "It requires no leap of imagination to presume that during the decades

9

of the 1940's, 50's, 60's, [70's,] and early 1980's when Anthony [Olivo] worked as a welder and steamfitter[,] either he or his spouse would be handling his clothes in the normal and expected process of laundering them so that the garments could be worn to work again. Anthony's soiled work clothing had to be laundered[,] and [his employer] *** should have foreseen that whoever performed that task would come into contact with the asbestos that infiltrated his clothing while he performed his contracted tasks." *Olivo*, 186 N.J. at 404, 895 A.2d at 1149.

CSX argues that the B&O Railroad did not know of the dangers of take-home asbestos while Ronald Simpkins worked for it. The question, however, is not whether the employer *actually* foresaw the risk to Annette Simpkins; rather, the question is whether, through reasonable care, it *should have* foreseen the risk. " '[W]hat is required to be foreseeable is the general character of the event or harm ***[,] not its precise nature or manner of occurrence.' " *Marshall*, 222 Ill. 2d at 442, 856 N.E.2d at 1060 (quoting *Bigbee v. Pacific Telephone & Telegraph Co.*, 34 Cal. 3d 49, 57-58, 665 P.2d 947, 952, 192 Cal. Rptr. 857, 862 (1983)). Like the *Olivo* court, we believe that it takes little imagination to presume that when an employee who is exposed to asbestos brings home his work clothes, members of his family are likely to be exposed as well. Thus, the general character of the harm to be prevented was reasonably foreseeable.

As we have previously stated, under a section 2-615 motion to dismiss, courts may not consider affidavits or other supportive documentation. *Kirchner*, 294 Ill. App. 3d at 677, 691 N.E.2d at 112; *Barber-Colman Co.*, 236 Ill. App. 3d at 1068, 603 N.E.2d at 1218-19. However, the plaintiff did file a number of documents in support of her allegations and arguments that the hazards of take-home asbestos were known or should have been known to the defendants' predecessor, the B&O Railroad, during the relevant years of Ronald Simpkins' employment from 1958 to 1964. The defendants have also argued that the risk of

harm from take-home exposure was not foreseeable until 1972, when the Occupational Safety and Health Administration, or OSHA, introduced regulations to prevent take-home asbestos exposure. We cannot consider those fact-specific arguments derived from affidavits or other supportive documentation. The defendants' choice of a section 2-615 motion, rather than a section 2-619 motion or a section 2-1005 motion for a summary judgment, controls the way both the parties may proceed and our scope of review. Again, for purposes of this motion we must take as true the plaintiff's pleadings, which allege that the B&O Railroad knew or should have known during the relevant times that the asbestos fibers carried home from work on Ronald Simpkins' clothing and body posed a risk of harm to Annette Simpkins. We find that the risk of harm to Annette Simpkins was foreseeable at the time Ronald Simpkins worked for the B&O Railroad.

Finding that the risk of harm was foreseeable does not end our inquiry. Foreseeability is an important factor (see *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 326, 383 N.E.2d 177, 180 (1978) (explaining that foreseeability is the cornerstone of our duty analysis)); however, it is not the only factor. As previously outlined, we must also consider the likelihood of the injury, the level of the burden involved in protecting against take-home asbestos exposure, and the consequences of placing that burden on an employer whose workers are exposed to asbestos. See *Marshall*, 222 Ill. 2d at 436-37, 856 N.E.2d at 1057.

We will next consider the likelihood of the injury. A cursory look at the cases that both the parties cite to in support of their various positions illustrates both the pervasiveness and the seriousness of asbestos-related diseases. While apparently the likelihood of contracting mesothelioma or another asbestos-related lung disease through take-home exposure varies depending on the duration of exposure, these cases also demonstrate that the likelihood of developing such a disease from anything more than incidental exposure is not remote. Annette Simpkins' complaint alleges facts that support the conclusion that the

11

magnitude of the harm was great, asserting that asbestos fibers have a "toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting[,] or otherwise absorbing them." Allegedly, Annette eventually died from her asbestos-related cancer. Thus, the likelihood of serious or fatal injury to anyone foreseeably exposed to asbestos is substantial enough to warrant the imposition of a duty. See *Forsythe*, 224 Ill. 2d at 291, 864 N.E.2d at 238 (finding a duty where the "likelihood of injury *** would not be remote and could be deadly").

We must also consider the burden involved in guarding against take-home asbestos exposure. We again find the decisions in *Satterfield* and *Olivo* persuasive. Although the courts in both Tennessee and New Jersey describe differently from Illinois courts the factors they consider in determining the existence of a duty, the courts in both states in fact addressed this issue.

The *Satterfield* court considered whether "the degree of foreseeability of the risk and the gravity of the harm outweigh the burden that would be imposed if the defendant were required to engage in an alterative course of conduct that would have prevented the harm." *Satterfield*, 266 S.W.3d at 365. The court discussed measures that could have prevented the daughter's exposure: the employer could have provided warnings to its employees about the dangers of bringing asbestos-laden clothing home, it could have provided coveralls for employees to wear while working around asbestos, and it could have required the employees to change before leaving and provided an on-site laundry facility to clean the coveralls. The court found these measures "to be feasible and efficacious without imposing prohibitive costs or burdens" on the employer. *Satterfield*, 266 S.W.3d at 368. Similarly, the *Olivo* court considered "the nature of the risk and how relatively easy it would have been to provide warnings to workers such as Anthony about the handling of his clothing or to provide protective garments." *Olivo*, 186 N.J. at 405, 895 A.2d at 1149.

12

Annette's complaint alleges a number of ways the employer here could have reduced the risk of exposure–*i.e.*, by substituting other products, providing warnings of the danger, providing safety instructions, testing the products, and requiring hygienic practices. CSX offers no real argument regarding the burden that implementing any of these practices would have placed on the employer, choosing instead to rely on the lack of any special relationship with Annette Simpkins as dispositive of its duty analysis. We find that the burden of guarding against take-home asbestos exposure is not unduly burdensome when compared to the nature of the risk to be protected against.

Finally, we consider the consequences of placing that burden on employers such as the defendants or their predecessor. The defendants contend that recognizing a duty here would expose employers to limitless liability to "the entire world." The *Olivo* court addressed a similar argument and found that such fears of limitless liability were "overstated." *Olivo*, 186 N.J. at 405, 895 A.2d at 1150. The court explained that the duty it was recognizing "is focused on the particularized foreseeability of harm to plaintiff's wife, who ordinarily would perform typical household chores that would include laundering the work clothes worn by her husband." *Olivo*, 186 N.J. at 405, 895 A.2d at 1150. Thus, the scope of liability will be inherently limited by the foreseeability of the harm.

We agree with the *Olivo* court that our focus on foreseeability provides an acceptable limitation on an employer's potential liability. It is certainly foreseeable that the wife of an asbestos-exposed worker would also be exposed to asbestos dust through washing his clothing. It is also foreseeable that other members of the household could be exposed. It is *not* necessarily foreseeable that any person who shares a cab with the asbestos worker would inhale asbestos dust and develop mesothelioma. See *Satterfield v. Breeding Insulation Co.*, No. E2006-00903-COA-R3-CV, slip op. at 14 (Tenn. App. April 19, 2007) (explaining that while harm to family members "who routinely come into close contact with employees'

13

contaminated clothing" is foreseeable, the risk of harm to people "who might possibly come into contact with the employees' clothing, but whose contacts are sporadic or unpredictable," is "only a remote possibility"), *aff'd*, 266 S.W.3d 347 (Tenn. 2008).

We note that the plaintiff argues that the duty to protect against take-home asbestos exposure can be limited to the immediate family of workers who are exposed to asbestos, while the defendants contend that there is no rational reason to draw the line there. As an example, they contend, a housekeeper or babysitter who regularly launders the employee's clothing might be just as likely to be exposed as members of the immediate family, if not more so. The court in *Satterfield* addressed similar arguments. The court agreed that there was no principled reason to limit liability to the immediate families of workers who handle asbestos. *Satterfield*, 266 S.W.3d at 374. The court explained as follows:

> "There is no magic talisman that protects persons from the harmful effects of exposure to asbestos simply because they do not live under the same roof or are not a member of the employee's family by blood or marriage. It is foreseeable that the adverse effects of repeated, regular, and extended exposure to asbestos on an employee's work clothes could injure these persons." *Satterfield*, 266 S.W.3d at 374.

The court therefore held that the duty to protect against exposure to asbestos transported outside the workplace on an employee's clothing extends to any person who is foreseeably exposed through "close contact with an employee's contaminated work clothes over an extended period of time." *Satterfield*, 266 S.W.3d at 374.

We do not believe that the issue of whether anyone other than a member of an employee's immediate family is owed a duty is before us. Whether harm to any such person is foreseeable depends on an assessment of circumstances not presented in this case. While we do not expressly limit the duty to immediate family members, we decide today only that employers owe the immediate families of their employees a duty to protect against take-home

14

asbestos exposure. Should a proper case arise, we can consider whether the duty extends to others who regularly come into contact with employees who are exposed to asbestos-containing products.

After a consideration of the policy factors used to determine duty, we believe that Annette Simpkins was entitled to the exercise of care from her husband's employer. We reiterate, however, that we are not relieving the plaintiff of the burden of proving her case. Duty is not the equivalent of liability; she must still prove a breach and proximate cause. These are factual matters for a jury to decide. We have merely found that, under the facts alleged, the B&O Railroad owed a duty of care to the spouse of one of its employees.

We hold that the plaintiff's complaint sufficiently states a cause of action to establish a duty of care owed by the defendants' predecessor to the decedent. We reverse the circuit court's dismissal of the plaintiff's complaint and remand the cause for further proceedings.


Reversed; cause remanded.


DONOVAN and WEXSTTEN, JJ., concur.

NO. 5-07-0346

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

<table>
<tr><td>CYNTHIA SIMPKINS, Individually and as Special Administrator for the Estate of Annette Simpkins, Deceased,</td><td>) Appeal from the<br>) Circuit Court of<br>) Madison County.<br>)</td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)<br>)</td></tr>
<tr><td>v.</td><td>) No. 07-L-62<br>)</td></tr>
<tr><td>CSX CORPORATION and CSX TRANSPORTATION, INC.,</td><td>)<br>) Honorable<br>) Daniel J. Stack,</td></tr>
<tr><td>Defendants-Appellees.</td><td>) Judge, presiding.</td></tr>
</table>

---

**Opinion Filed**:     June 10, 2010

---

**Justices**:     Honorable Melissa A. Chapman, J.

Honorable James K. Donovan, J., and
Honorable James M. Wexstten, J.,
Concur

---

**Attorneys for Appellant**     John A. Barnerd, Amy Garrett, SimmonsCooper LLC, 707 Berkshire Boulevard, East Alton, IL 62024; Charles W. Chapman, 300 Evans Avenue, Wood River, IL 62095

---

**Attorneys for Appellees**     Kurt E. Reitz, Heath H. Hooks, Thompson Coburn LLP, 525 West Main Street, P.O. Box 750, Belleville, IL 62222-0750

---