# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Estate of Holmes*, 2011 IL App (4th) 100462

---

| | |
|---|---|
| Appellate Court Caption | *In re:* the Estate of JEAN HOLMES, Deceased, ROGER HOLMES, Special Administrator, Plaintiff-Appellee, v. PNEUMO ABEX, L.L.C., Sued as Its Predecessor Pneumo Abex Corporation; and HONEYWELL INTERNATIONAL, INC., Defendants-Appellants. |
| District & No. | 4th District<br>Docket No. 4–10–0462 |
| Filed | June 22, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a wrongful death action alleging that decedent's husband exposed decedent to asbestos when he brought asbestos fibers home on his clothes and person after working at an asbestos plant operated by a company that conspired with other entities to suppress information about the hazards of asbestos, the judgment for plaintiff was reversed, since the evidence indicated that the danger of household or take-home exposure to asbestos was not reasonably foreseeable until after decedent's husband worked at the asbestos plant; therefore, defendants did not owe a duty to decedent, the jury verdict could not stand, and the trial court should have granted defendants' motions for judgment *n.o.v.* |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 06–L–57; the Hon. Scott Drazewski, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Reagan W. Simpson (argued), of King & Spalding LLP, of Austin,
Texas, Amy Eikel, of King & Spalding, of Houston, Texas, Robert W.
Scott, of Swain, Hartshorn & Scott, and Karen L. Kendall, of Heyl,
Royster, Voelker & Allen, both of Peoria, and Raymond H. Modesitt,
of Wilkinson, Goeller, Modesitt, Wilkinson & Drummy, of Terre Haute,
Indiana, for appellant Pneumo Abex, L.L.C.

Craig H. Zimmerman, Colleen E. Baime, Michael W. Weaver, and
Steven Hoeft (argued), all of McDermott Will & Emery LLP, of
Chicago, and Dennis J. Dobbels, of Polsinelli, Shalton, Welte &
Suelthaus, P.C., of Edwardsville, and Nicole C. Behnen, of Polsinelli,
Shalton, Welte & Suelthaus, P.C., of St. Louis, Missouri, for appellant
Honeywell International, Inc.

James Wylder (argued), of Wylder Corwin Kelly LLP, of Bloomington,
for appellee.

Panel

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justice Appleton concurred in the judgment and opinion.
Presiding Justice Knecht dissented, with opinion.

## OPINION

¶ 1    In May 2006, plaintiff, Roger Holmes, as special administrator of the estate of Jean
Holmes, deceased, sued defendants, Pneumo Abex, L.L.C. (Abex), Honeywell International,
Inc. (Honeywell), and others to recover damages for wrongful death. In March 2009, a jury
found for plaintiff and assessed damages against defendants. In May 2009, defendants filed
posttrial motions, which the court denied.

¶ 2    On appeal, defendants argue they are entitled to judgment notwithstanding the verdict
because they owed no duty to decedent. We reverse.

¶ 3                          I. BACKGROUND

¶ 4    In May 2006, plaintiff filed a complaint against defendants and others for the wrongful
death of his mother, Jean Holmes. The complaint alleged decedent's husband, Donald
Holmes, worked at an asbestos plant operated by Union Asbestos & Rubber Company, later
known as Unarco Industries, Inc. (Unarco). During his employment, Holmes was exposed
to asbestos and brought the fibers home on his clothes and person, which exposed decedent

to the asbestos. Decedent was diagnosed with mesothelioma, and she died in April 2006.

¶ 5        Plaintiff alleged defendants, along with Unarco, Johns-Manville Corporation (Johns-Manville), Raymark Industries, Inc. (formerly Raybestos-Manhattan, Inc.) (Raybestos), Owens Corning, Owens-Illinois, and Metropolitan Life Insurance Company (MetLife), conspired to suppress information about the harmful effects of asbestos and refused to warn employees about the hazards of asbestos. Plaintiff claimed defendants' agreements and acts done in furtherance thereof proximately caused decedent's injury and death.

¶ 6        Honeywell is the successor by merger to the Bendix Corporation (Bendix), which manufactured automotive brakes and brake linings. At the relevant times, brake linings, including those made by Bendix, were made with chrysotile asbestos. Bendix's largest supplier of raw chrysotile was Johns-Manville. Abex is the successor to a variety of entities, the original being American Brake Shoe & Foundry Company. Abex made automotive brake products and brake linings with chrysotile asbestos.

¶ 7        In February 2009, plaintiff's case proceeded to a jury trial. As the parties are familiar with the facts in this case, we will set forth only those facts necessary for the proper disposition of this appeal. The parties do not dispute that decedent developed peritoneal mesothelioma, which caused her death at age 93. Peritoneal mesothelioma has been associated with exposure to asbestos. It was also undisputed that decedent's only exposure to asbestos fibers was on the work clothes of her husband, who worked at the Unarco manufacturing plant in Bloomington from 1962 to 1963. The asbestos was supplied to Unarco by Johns-Manville and Raybestos. It was undisputed that decedent and her husband were never exposed to any Bendix or Abex products.

¶ 8        Plaintiff presented evidence that showed multiple companies, including Johns-Manville, Raybestos, and Abex entered into a written agreement in 1936 with the Saranac Laboratory (Saranac agreement) to sponsor research on industrial dusts. The evidence showed an agreement among some of the companies to reduce or de-emphasize references to asbestosis in a 1935 asbestos industry study prepared by Dr. Anthony Lanza of MetLife; to have references to lung cancer in animals and asbestosis or cancer in humans deleted from a 1948 asbestos study prepared by Dr. Leroy Gardner and Dr. Arthur Vorwald of Saranac Laboratory and to keep the study and its underlying data from being disseminated to the public; and to prevent publication from 1935 to 1969 of any articles about the dangers of asbestos in *Asbestos* magazine.

¶ 9        Evidence showed Unarco, Johns-Manville, Raybestos, and Abex did not change their business practices concerning asbestos or attempt to warn their employees. Plaintiff also presented evidence as to the activities of Owens Corning and Owens-Illinois. Owens-Illinois received a 1948 report from Dr. Vorwald that concluded its asbestos-containing Kaylo pipe and block insulation was a potentially hazardous material and capable of producing asbestosis. In various journals, Owens-Illinois and Owens Corning sold Kaylo insulation stating it was "nonirritating" and "nontoxic."

¶ 10       Plaintiff's expert, Dr. Barry Castleman, a consultant specializing in toxic-substances control, testified he had no information that Bendix was aware of communications that were taking place between Raybestos, Johns-Manville, and MetLife as to the study by Dr. Lanza.

He was not aware of Bendix being involved in any effort to prevent *Asbestos* magazine from publishing articles about asbestos. Dr. Castleman had no knowledge that Bendix ever knew or approved of the Saranac agreement or that it had known about Dr. Gardner's critical study. He also had no knowledge of any communication between Bendix and Owens-Illinois or Owens Corning.

¶ 11    Dr. Castleman testified Bendix was a member of the Friction Materials Standards Institute (FMSI), a trade organization made up of brake-lining manufacturers. Joel Charm testified Bendix and American Brake Shoe & Foundry Company had a single member of their respective board of directors in common from 1930 to 1934. Bendix and Johns-Manville also had a single member in common on their board of directors from 1959 to 1963.

¶ 12    William Dyson, an industrial hygienist, testified for defendants. He stated he prepared a bibliography of household exposure articles and listed a 1960 article by Dr. J.C. Wagner that spoke to mesothelioma as a result of take-home exposure to a family member.

¶ 13    Following closing arguments, the jury found for plaintiff and against both defendants. The jury assessed $2,632,611.66 in damages. The trial court later entered an amended judgment against defendants, jointly and severally, in the amount of $1,546,361.66. In May 2009, Honeywell and Abex filed posttrial motions, which the court denied. This appeal followed.

¶ 14                                II. ANALYSIS

¶ 15    Defendants argue they are entitled to judgment notwithstanding the verdict because no relationship existed between them and decedent and thus no duty was owed to her. We agree.

¶ 16    "A judgment *n.o.v.* should be granted only when 'all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [a] movant that no contrary verdict based on that evidence could ever stand.' " *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178, 854 N.E.2d 635, 652 (2006) (quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967)). A reviewing court "cannot reweigh the evidence and set aside a verdict because different conclusions could have been drawn." *Dukes v. Pneumo Abex Corp.*, 386 Ill. App. 3d 425, 444, 900 N.E.2d 1128, 1143 (2008). A trial court's decision denying a motion for judgment *n.o.v.* is reviewed *de novo*. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 100, 923 N.E.2d 735, 746 (2010).

¶ 17    Our supreme court has stated the function of a civil-conspiracy claim is to extend "liability for a tortious act beyond the active tortfeasor to individuals who have not acted but have only planned, assisted, or encouraged the act." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133, 720 N.E.2d 242, 258 (1999) (citing *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62-63, 645 N.E.2d 888, 894 (1994)).

"To recover under a theory of civil conspiracy, a plaintiff must prove an agreement and a tortious act committed in furtherance of that agreement. *McClure*, 188 Ill. 2d at 133-34, 720 N.E.2d at 258. The agreement must be knowingly and intentionally made. *McClure*, 188 Ill. 2d at 133, 720 N.E.2d at 258. However, a defendant who understands the general

-4-

objectives of the conspiracy, accepts them, and agrees either explicitly or implicitly to further those objectives is liable as a conspirator." *Dukes*, 386 Ill. App. 3d at 444, 900 N.E.2d at 1143.

¶ 18 Defendants argue they owed no duty to disclose the hazards of asbestos to decedent and therefore cannot be held liable for civil conspiracy. Further, defendants argue a duty should not exist in so-called "household exposure," "take-home exposure," or "secondhand exposure" cases, *i.e.*, in situations where a worker is exposed to asbestos dust at a place of employment and takes his or her clothes home, thereby exposing a household member to the dust as well.

¶ 19 Whether a duty exists depends on whether the parties stood "in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436, 856 N.E.2d 1048, 1057 (2006). Our supreme court has stated that whether a relationship exists justifying the imposition of a duty depends on the following four factors:

"(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Marshall*, 222 Ill. 2d at 436-37, 856 N.E.2d at 1057.

Whether a duty should be imposed involves considerations of public policy. *Marshall*, 222 Ill. 2d at 436, 856 N.E.2d at 1057; see also *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 303, 730 N.E.2d 1119, 1134 (2000) ("the existence of a duty turns in large part on public policy considerations").

¶ 20 We note one appellate district in this state has found "employers owe the immediate families of their employees a duty to protect against take-home asbestos exposure." *Simpkins v. CSX Corp.*, 401 Ill. App. 3d 1109, 1119, 929 N.E.2d 1257, 1266 (2010). In that negligence case, the decedent contracted mesothelioma following her exposure to asbestos fibers brought home on the work clothes of her husband, who worked for B&O Railroad, the defendants' predecessor, from 1958 to 1964. *Simpkins*, 401 Ill. App. 3d at 1109, 929 N.E.2d at 1258. The plaintiff argued Illinois law supported the finding of a duty to protect family members from take-home asbestos exposure, while the defendants argued finding such a duty would lead to unlimited liability. *Simpkins*, 401 Ill. App. 3d at 1113, 929 N.E.2d at 1261.

¶ 21 In reviewing the dismissal of the plaintiff's complaint on appeal, the Fifth District relied on two out-of-state cases that found the existence of a duty in similar circumstances. *Simpkins*, 401 Ill. App. 3d at 1114-16, 929 N.E.2d at 1262-63 (citing *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 352 (Tenn. 2008), and *Olivo v. Owens-Illinois, Inc.*, 895 A.2d 1143, 1149 (N.J. 2006)). In looking at whether a relationship existed between the parties to establish a duty, the Fifth District looked at the four *Marshall* factors. *Simpkins*, 401 Ill. App. 3d at 1113-14, 929 N.E.2d at 1262. The court found the risk of harm to the decedent was foreseeable at the time her husband worked for B&O Railroad and "the likelihood of serious or fatal injury to anyone foreseeably exposed to asbestos is substantial enough to warrant the imposition of a duty." *Simpkins*, 401 Ill. App. 3d at 1117, 929 N.E.2d at 1264. The court also found "the burden of guarding against take-home asbestos exposure

is not unduly burdensome when compared to the nature of the risk to be protected against" and the consequences of liability "will be inherently limited by the foreseeability of the harm." *Simpkins*, 401 Ill. App. 3d at 1118, 929 N.E.2d at 1265. The court concluded B&O Railroad owed a duty of care to the spouse of one of its employees. *Simpkins*, 401 Ill. App. 3d at 1120, 929 N.E.2d at 1266.

¶ 22    Although acknowledging the Fifth District's decision in *Simpkins*, defendants point to other jurisdictions that have found no duty to household members in asbestos-related cases. See *Martin v. Cincinnati Gas & Electric Co.*, 561 F.3d 439, 446 (6th Cir. 2009); *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1184 (10th Cir. 1995); *Boley v. Goodyear Tire & Rubber Co.*, 2010 Ohio 2550, ¶ 25, 929 N.E.2d 448, 453; *Riedel v. ICI Americas Inc.*, 968 A.2d 17, 23 (Del. 2009); *In re Certified Question from the Fourteenth District Court of Appeals of Texas*, 740 N.W.2d 206, 221 (Mich. 2007); *CSX Transportation, Inc. v. Williams*, 608 S.E.2d 208, 210 (Ga. 2005); *In re New York City Asbestos Litigation*, 840 N.E.2d 115, 122 (N.Y. 2005); *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456, 462 (Tex. App. 2007); *Adams v. Owens-Illinois, Inc.*, 705 A.2d 58, 67 (Md. Ct. Spec. App. 1998).

¶ 23    In a recent premises-liability case here in Illinois, the Second District considered whether the defendant company owed a duty to a person who did not have contact with the premises but was allegedly injured by asbestos fibers that were carried home on contaminated clothing. *Nelson v. Aurora Equipment Co.*, 391 Ill. App. 3d 1036, 1037, 909 N.E.2d 931, 933 (2009). The Second District found no duty existed because no relationship was established as the decedent was never on the defendant's premises. *Nelson*, 391 Ill. App. 3d at 1044, 909 N.E.2d at 938-39.

¶ 24    With these cases in mind, we find no duty was owed to decedent in this case. Even if we were to find a relationship existed between the parties as the Fifth District found in *Simpkins*, we would find no duty existed because of the lack of foreseeability in this case. To show the injury was reasonably foreseeable here, plaintiff had to establish that when decedent's husband worked at Unarco from 1962 to 1963, it was reasonably foreseeable asbestos affixed to a worker's clothes during work would be carried home and released at levels that would cause an asbestos-related disease in a household member. Here, however, plaintiff's expert, Dr. Castleman, testified the first epidemiological study showing an association between disease and asbestos fibers brought home from the workplace was presented and published by Gerald Newhouse and Hilda Thompson in October 1964.

¶ 25    Plaintiff responds by arguing literature going back as far as 1913 showed the potential for disease as a result of workers bringing home toxic substances. However, plaintiff's evidence does not show defendants or the alleged conspirators in the industry were aware of concrete evidence of take-home exposure of asbestos as opposed to the more prevalent literature involving direct exposure such that it would be readily foreseeable that a danger existed. See *Martin*, 561 F.3d at 445 (noting "other courts have found there was no knowledge of bystander exposure in the asbestos industry in the 1950's" and the expert's report conceded "that the first studies of bystander exposure were not published until 1965"); *In re Certified Question*, 740 N.W.2d at 218 (finding the evidence showed "the risk of 'take home' asbestos exposure was, in all likelihood, not foreseeable by defendant while [the plaintiff] was working at defendant's premises from 1954 to 1965"); *Alcoa*, 235 S.W.3d at

461 (noting the first case study of nonoccupational exposure to asbestos was published in 1965). Moreover, the 1960 Wagner article that documented a single incident of household exposure involved South Africans who worked in a crocidolite mine and/or lived in the vicinity where the streets were paved with the tailings from the mine. Dyson stated "you cannot say that is a clear-cut case of household contact mesothelioma."

¶ 26　　With the evidence of secondhand exposure that was known during the pertinent time period in this case, it was not reasonably foreseeable that an employee working in the confined spaces of an asbestos-dust-producing factory would leave that space, travel through the fresh air of the outside world, and then expose those inside the home to whatever amount of dust remained on his clothing at levels causing an asbestos-related malady.

¶ 27　　Here, the evidence indicates the danger of household or take-home exposure to asbestos was not reasonably foreseeable until after decedent's husband worked at Unarco. Accordingly, defendants did not owe a duty to decedent, and the jury verdict for plaintiff cannot stand. Thus, the trial court should have granted defendants' motions for judgment *n.o.v.* Given our decision on this issue, we need not address defendants' remaining arguments.

¶ 28　　　　　　　　　　　　III. CONCLUSION

¶ 29　　For the reasons stated, we reverse the trial court's judgment.

¶ 30　　Reversed.

¶ 31　　PRESIDING JUSTICE KNECHT, dissenting:

¶ 32　　I agree with the decision in *Simpkins,* 401 Ill. App. 3d at 1119, 929 N.E.2d at 1266, regarding duty, and therefore dissent. Jean Holmes' husband worked at Unarco, where he was exposed to asbestos. Asbestos dust and fibers came home with him on his work clothes and person. Jean Holmes was exposed to asbestos dust and fibers, contracted mesothelioma, and died.

¶ 33　　The dangers of asbestos had been known for decades before Roger Holmes worked at Unarco from 1962 to 1963. The first epidemiological study showing an association between disease and asbestos fibers brought home from the workplace was not published until 1964. However, it was foreseeable in 1962 to any thinking person that asbestos dust and fibers on a worker's clothing and body would be carried home. The worker's wife might well embrace her husband, or pat his back, and then wash his work clothes. That would expose the wife to asbestos fibers and the risk of an asbestos-related disease. One does not require an epidemiological study to recognize disease and death from asbestos exposure dating back to the nineteenth century. No leap in logic is required to understand the spouse of a worker would also be exposed, and with exposure comes the risk of disease.

¶ 34　　The injury was foreseeable and the risk was high. The burden of guarding against take-home asbestos exposure is no greater burden than the burden of protecting the employee from initial exposure.

¶ 35　　This is not a step toward unlimited liability. This does not involve a mail carrier, or a

neighbor, or a friend at a local tavern who claims exposure from sitting next to a worker on a bar stool. This was the worker's wife who greeted him at the door, cooked his meals, and washed the very clothes that brought poison into their home.